# In the United States Court of Federal Claims

No. 14-183L
(Filed: November 7, 2017)

|  |  |
|---|---|
| IDEKER FARMS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## QUESTIONS FOR ORAL ARGUMENT

1. **Plaintiffs' Standing**.

    In order to maintain a taking claim, the plaintiff must have a recognized property interest under state law.

    **A**.   The government challenges the standing of the plaintiffs listed on Appendix A to this order. The parties should be prepared at closing arguments to discuss the standing of these plaintiffs with appropriate citations to the legal authority under state law that counsel for either side is relying on.

    **B**.   The government also challenges whether plaintiffs claiming a taking of their crops pursuant to a crop-sharing agreement may maintain a taking claim on the grounds that they are seeking "consequential damages" and not a taking of a property interest. The parties should be prepared to discuss this issue and in addition to the cases relied upon by the government, should also be prepared to discuss *Barnes v. United States*, 538 F.2d 865 (Ct. Cl. 1976) and *King v. United States*, 427 F.2d 767 (Ct. Cl. 1970), which apparently recognize a taking of crops as a valid taking claim.

2. **Legal Standards**. In order to succeed on the merits of their taking claims the plaintiffs in this phase of the litigation need to prove the first 3 elements of a taking claim as discussed by the Federal Circuit on remand in *Arkansas Fish &*

*Game Comm'n v. United States*, 736 F.3d 1364 (2013): 1. Causation; 2. Foreseeability; and 3. Severity/Duration.

A.   **Causation:**

> In preparing their argument, the parties should understand that the court has viewed this issue in the context of 3 basic causation scenarios: (1) flooding that plaintiffs claim was caused by the Corps' changes to the River Management structures after 2004 - e.g. shallow water habitat creation; dike notching, etc. and in releasing water for the benefit of listed species; (2) flooding in 2011 that was allegedly caused by the Corps' failure to take steps to lower the reservoirs prior to May 2011 and thus plaintiffs claim caused a flood of greater size and duration; and (3) flooding plaintiffs claim was caused by levee breaches and failures for the years identified, which depending on the year in question relates to the Corps' actions in changing the River Management structures and releasing water from the dams or for the reasons identified above regarding Corps actions in 2011.
>
> There appears to be some dispute between the parties about the nature of the plaintiffs' taking claims and the standards to apply. As the court understands the plaintiffs' case, there are claims for: (1) flowage easements in connection with potentially all years in which taking claims are made; (2) a permanent taking for those plaintiffs who claim that portions of their properties are no longer useable following the 2011 flood; and (3) permanent takings of personal property, including crops, homes, etc., following various years of flooding (although primarily 2011).
>
> The court is of the view that all 3 elements must be proven for each type of taking claim. The parties should be prepared at closing arguments to discuss the standards applicable to each of the plaintiffs' taking claims and whether different standards apply to different taking claims.
>
> **Questions:**
>
> i.   The parties should be prepared to discuss the plaintiffs' reliance on **a theory of multiple acts** by the Corps to prove causation. The plaintiffs rely on *Cotton Land Co. et al. v. United States*, 75 F. Supp. 232, (Ct. Cl. 1948), among other cases, to explain why in flooding cases they may prove their case by relying on multiple acts of the Corps. (*See* discussion of *Cotton* in *Cary, et al. v. United States*, 552, F.3d 1373 (Fed. Cir. 2009). The government relies on *Acceptance Insurance Companies, Inc. v. United States*, 583 F.3d 849, 855 to argue that the plaintiffs must "pinpoint" the specific acts which

        plaintiffs claim caused flooding. Where, in the unique circumstances of this case, the Corps has taken a River-wide approach to meeting its Endangered Species Act obligations and has prepared studies (EISs) to accomplish its responsibilities, how should the court consider the Corps' changes in River Management and in operating the dams for the benefit of endangered species?

  ii.    The parties should also be prepared to discuss the "but for" test for establishing causation and the distinction between proving that the government's actions were a "but for" cause versus a contributing factor. *See Bartz v. United Stated*, 633 F.2d 571 (Ct. Cl. 1980). Does the court understand that the parties agree that the government's actions need not be the "sole" cause to prove causation? Does the "but for" test require precise quantification of the contributions of other causes in order to establish causation?

  iii.    The parties should be prepared to discuss *Cary* and the issue of "intervening cause" with a focus on the differences noted between flooding and fire cases. In addition, the parties should be prepared to discuss which party has the burden of proof with regard to "intervening cause" the plaintiffs or the government.

**B.**   **Foreseeability:**

As the parties know, this court may only compensate plaintiffs for a taking and not for a tort. *See, e.g., Moden v United States*, 404 F.3d 1335 (Fed. Cir 2005). This court has not have jurisdiction over claims sounding in tort, and under the Flood Control Act, 33 U.S.C. § 702c, the government is immune from tort liability. Under *Ark. Fish & Game Comm'n v. United States*, 133 S.Ct. 511, 522 (2012) and Federal Circuit precedent, in order to prove the injury is not the result of a tort, the plaintiff must prove that the injury was a "foreseeable," in that the government "intended to invade a protected property interest" or that "the asserted invasion was the direct, natural, or probable result of an authorized activity and not an incidental or consequential injury." *Ridge Line, Inc. v United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003). *See also John Hortsmann Co. v. United States*, 257 U.S. 138, 144-45 (1921) and *In re Chicago v. United States*, 799 F.2d 317, 325-26 (7th Cir. 1986).

**Questions**:

  i.    For each of the 3 categories of taking claims that the court has identified above, the parties should be prepared to discuss what each

3

        party understands is the nature of the proof required with regard to forseeability. In this connection, the parties should be prepared to discuss whether subjective beliefs regarding potential flooding are necessary to establish foreseeability.

    ii.    What role does expert opinion testimony play to show that flooding was or was not accidental or unpredictable?

**C**.    **Severity/Duration:**

With regard to duration and severity, the court reiterates that issues regarding the location of various plaintiffs' properties within the floodplain and with regard to *United States v. Sponenbarger*, 308 U.S. 256 (1939) and its progeny are not relevant in this phase of the litigation, but will be addressed in the next phase of the litigation should the plaintiffs prevail on these first 3 elements.

**Question**:

    i.    Does the court understand that the parties agree that to prove a taking plaintiffs need to prove that the injury to their property deprived them of "customary use" discussed in the Federal Circuit's *Ark. Fish & Game Comm'n* remand decision: "[o]n addressing the severity issue, the Supreme Court characterized the asserted interference with the Commission's property rights in this case as depriving the Commission 'of the customary use of the Management Area as a forest and wildlife preserve.'" 736 F.3d 1364, 1375?

3.    **Background Facts**. The court has reviewed the National Research Council reports, PX 16 and PX 17, the various EISs, Exhibit 1 to the government's post-trial brief, as well as other exhibits and testimony regarding the history of the Missouri River both before and after regulation, together with the history of Corps' actions in response to the ESA, the multi-district litigation, and the 2003 Biological Opinion and 2004/2006 Master Manuals.

The court has not found any fundamental dispute regarding the basic facts of what the Missouri River was like before it was regulated, how the Corps regulated the River and managed it post-regulation, and what the Corps has had to do to comply with its obligations under the ESA, with regard to changing River Management structures and in making decisions regarding operations of the dams. To the extent that either party contends that there is a fundamental dispute regarding these facts, the party should be prepared to provide a detailed list of the facts (leaving

aside how they may have been characterized by a party)[1] that the party believes are in dispute.  The party must accompany that list with an explanation and with transcript and exhibit citations as to why the facts discussed in the above-cited exhibits are not correct.

4. **Expert and Fact Testimony (Not Including Testimony From The Individual Plaintiffs)**.  The parties should be prepared to address in detail the critical opinions of their respective experts and the fact testimony they are relying upon for each of the years of flooding.  The court expects that each year of flooding will be addressed separately, as it was in the testimony.

    The application of those facts and opinions to individual properties will be discussed separately in the discussion on Issue 5 below.

    These presentations should focus on (a) causation and (b) foreseeability for each year of flooding. Proof of severity should be left for discussion in the presentations on each individual plaintiffs' claims.

    The presentations should be focused on both the opinion and fact evidence supporting or challenging flooding for each year separately and should include: 1. "but for" causation and foreseeablity evidence regarding the overbank, seepage and blocked drainage claims separate from the 2011 flood and levee failures; 2. "but for" causation and foreseeability evidence for the 2011 flood; and 3. "but for" causation and foreseeability evidence for each levee failure.

    In this connection, the court expects a discussion regarding the plaintiffs' theory that the actions of the Corps in establishing Shallow Water Habitat and in creating habitat, opening chutes, etc. have led to a shallower and slower river during periods of higher flow.  The parties should be prepared to explain whether this evidence shows only a correlation to plaintiffs' flooding or can be used to establish causation.  If this evidence can establish causation, the parties should also be prepared to explain how (a) floodplain development has constricted the River (along roads, levees), (b) tributary flows causing the flooding, together with other weather events, and (c) natural changes to the River must be considered by the court.  If the government contends that these factors negate plaintiffs' causation claim, do these impacts need to be quantified?

    In the parties' presentations, the court expects a discussion regarding precipitation trends in the Missouri River basin and whether plaintiffs are making claims for

---

[1] The court found Exhibit 1 "Plaintiffs' Missing or Inaccurate Citations" attached to the government's post trial brief (ECF No. 382-1) too difficult to review and follow.

years with unanticipated amounts of precipitation both above and below the main stem dams. (The specific conflicts between Dr. Hromadka's weather charts and Mr. Woodbury's for each individual plaintiff will be discussed in the context of the individual claims.).

With regard to 2011, in addition to reviewing the expert and fact evidence, the court also needs the parties to explain their positions regarding Dr. Christensen's acknowledgment that in the "but for" world, there would have been flooding. What evidence is there that a taking claim remains if the plaintiffs' home would have been flooded or crops lost from the flood that would have occurred regardless?

With regard to levee failures and breaches, the court expects a discussion that clarifies the parties' expert positions regarding the cause of each failure and whether levee failures or breaches could have been anticipated for each of the years in question. The parties should be prepared to review the opinions and fact testimony in detail.

5. **Individual Plaintiff Claims**. The court must apply the legal standards to the facts and opinions presented for each individual plaintiff for each taking claim. The parties should be prepared to review the evidence for each plaintiff, taking into account the prior discussions to show either that the plaintiff has met his or her burden of proof or has not. For example, in their presentations, the parties should be prepared to explain whether the claimed dates of flooding correlate to the evidence presented by Dr. Christensen for the plaintiffs or Mr. Woodbury for the government, as well as the dates of River Management changes in the vicinity of the subject property.

   As noted above, the parties should use this portion of the presentation to address conflicts between Dr. Hromodka's and Mr. Woodbury's weather claims and to discuss whether plaintiffs have met their burden of proof with regard to the severity/duration element of liability.

6. **Time Limits**. The court anticipates thorough closing arguments and wants to provide the parties with the time they need to make their presentations. For each issue area, the plaintiffs will go first and will have the last word. Each party should anticipate that they will have up to 3 hours to discuss each of the 5 separate issue areas for a total of 15 hours per side. For issues 4 and 5, the parties will switch back and forth for each year and then for each plaintiff before moving on the next year or plaintiff.

   **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge