# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

*Filed Electronically: May 14, 2018*

| | |
|---|---|
| IDEKER FARMS, INC., *et al.*,  ) | |
| ) | |
| Plaintiffs, ) | Case No.: 1:14-cv-00183-NBF |
| v.  ) | |
| ) | Senior Judge Nancy B. Firestone |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' MOTION FOR RECONSIDERATION

The Court should reconsider its trial opinion and apply the correct legal standard for causation. The trial opinion is based on an incorrect standard for causation, which is a clear legal error. Failure to reconsider the Phase I Trial Opinion would severely prejudice the United States and consume judicial resources on a case in which Plaintiffs have failed to prove causation. The just remedy, endorsed by the Federal Circuit, is to vacate the Court's findings regarding causation, and dismiss all Plaintiffs' claims for failure of proof on causation.

## STANDARD OF REVIEW

Rule 59(a) of the Rules of the Court of Federal Claims ("RCFC") permits the Court to reconsider and amend its order for any reason for which a new trial or hearing has been granted or "upon a showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." To prevail, the United States must make a showing of extraordinary circumstances which justify relief. *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004). Those circumstances include clear legal error and/or manifest injustice. *See System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007), *aff'd in part and rev'd in part on other grounds*, 457 F. App'x 930 (Fed. Cir. 2012). Overall, "[t]he decision

whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 583 (Fed. Cir. 1990).

## ARGUMENT

The United States requests the Court reconsider and set aside the Trial Opinion, and enter a judgment dismissing Plaintiffs' claims. The Federal Circuit's recent, binding authority in *St. Bernard Parish* makes clear that to establish causation, Plaintiffs must account for all government actions that reduce the risk of flooding. 887 F.3d 1354, 1362 (Fed. Cir. 2018). But in its Phase I Trial Opinion, the Court found that some Plaintiffs satisfied their burden on causation merely by showing that the Corps' reservoir system and river changes led to higher water surface elevations than would have existed had the Corps continued its previous operations without those changes. *Ideker Farms, Inc. v. United States*, No. 14-183L, 2018 WL 1282417, at *15 (Fed. Cl. Mar. 13, 2018). This is clear legal error. Moreover, Plaintiffs offered no evidence that the flooding on their properties was more than would have occurred if the United States had never built the reservoirs, constructed or repaired levees, or implemented the Bank Stabilization and Navigation Project ("BSNP"). This is failure of proof on a threshold legal issue. The Court should therefore reconsider its Phase I Trial Opinion and dismiss all Plaintiffs' claims. Plaintiffs had ample opportunity to apply the correct causation standard.[1] Reopening the record now would be prejudicial to the United States and futile given the Court's findings regarding the pre- and post-regulation environment. Plaintiffs conceded, and this Court found, that the Corps' overall operation of the Missouri River Mainstem Reservoir System benefitted Plaintiffs' properties.

---

[1] In fact, Plaintiffs took the position that any consideration of the benefits afforded by government action were irrelevant. Tr. of Sept. 30, 2016 Pre-Trial Conf. at 470:1 to 471:10.

### A. Plaintiffs Failed to Prove Causation Under the Proper Legal Standard; Justice Requires that this Court Correct Clear Legal Error.

"It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury." *St. Bernard Parish*, 887 F.3d at 1362 (quoting *United States v. Archer*, 241 U.S. 119, 132 (1916)). The "causation analysis requires the plaintiff to establish what damage would have occurred without government action." *Id.* at 1363; *accord United States v. Sponenbarger*, 308 U.S. 256, 266 (1939) (a takings plaintiff must prove that the government subjected his land to "additional flooding, above what would have occur[ed] if the Government had not acted"). When considering the no-government-action condition, it is legal error for a plaintiff to focus on "isolated government actions"—the "causation analysis must consider the impact of the entirety of government actions that address the relevant risk." *St. Bernard Parish*, 887 F.3d at 1364; *see also id.* at 1364-65 (noting that the remand decision of *Arkansas Game & Fish Comm'n* clarified that the "proper comparison would be between the flooding that occurred prior to the construction of the dam and the flooding that occurred during the [subsequent] deviation period"). Thus, "[w]hen the government takes actions that are directly related to preventing the same type of injury on the same property where the damage occurred, such action must be taken into account even if the two actions were not the result of the same project." *Id.* at 1366. "[T]he causation analysis must consider both risk-increasing and risk-decreasing government actions over a period of time to determine whether the totality of the government's actions caused the injury." *Id.*

Here, Plaintiffs failed to prove that the flooding on their properties was more than would have occurred if the United States had never built the federal Missouri River Mainstem Reservoir System, constructed or repaired levees, or implemented the BSNP. That failure is significant because the United States' efforts effectively prevented "the same type of injury on the same

3

property." *St. Bernard Parish*, 887 F.3d at 1366.  Plaintiffs failed to present evidence on this crucial question.  Even so the Court found:

> (1) the Corps' [reservoir] System and River Changes were made for a single purpose; (2) the cumulative and combined effects of the System and River Changes made for that single purpose led to higher [Water Surface Elevations] WSEs than would have existed without the System and River Changes; and (3) the higher WSEs led to flooding, or more severe flooding on the property owned or farmed by that individual plaintiff than the flooding the plaintiff would have experienced without the Corps' [reservoir] System and River Changes.

*Ideker Farms, Inc.*, 2018 WL 1282417, at *15.  The Court allowed Plaintiffs simply to compare water surface elevations before and after 2004.[2]  In doing so, Plaintiffs essentially "cherry-picked parts of the government policy" instead of analyzing all government actions.  *Id.*

Under binding precedent, the Court's Phase I Trial Opinion commits clear legal error, which requires reconsideration.  The Court should act now to prevent further injustice to the United States and to conserve judicial resources thereby eliminating the need for further briefing or preparations for Phase II.

**B.   Plaintiffs' Failure of Proof Requires Dismissal of Their Claims; Plaintiffs Had a Full Opportunity to Prove Causation, so Reopening the Record is Prejudicial and Futile.**

In *St. Bernard Parish*, when the Court determined the plaintiffs failed to prove causation, the Court did not remand the case to allow for more evidence.  It simply reversed the trial court's opinion.  *St. Bernard Parish*, 887 F.3d at 1368.  This Court should do the same.

---

[2] Plaintiffs' experts offered no opinion regarding the impact of the entirety of government actions that address the relevant risk.  *See* Pls.' Post-Trial Br. 104-05, ECF No. 374 (citing Dr. Christensen testimony explaining his four expert opinions); *id.* at 115-16 (citing Dr. Hromadka's testimony explaining his ten expert opinions); *id.* at 122-28 (citing Mr. Tofani's testimony explaining his expert opinions).

Plaintiffs are in the exact same situation as the plaintiffs in *St. Bernard Parish*. This Court has made findings on causation. Plaintiffs had ample opportunity[3] to meet their burden, yet failed to look at the entirety of the government action, including the "impact of the risk-reducing project[s]." *St. Bernard Parish*, 887 F.3d at 1367-68. Plaintiffs argued causation in a manner that was "inconsistent with governing Supreme Court and Federal Circuit [A]uthority." *Id.* at 1364. Plaintiffs' claims should be dismissed because "there was a failure of proof on the key issue of causation." *Id.* at 1368.

In the face of a faulty legal strategy, Plaintiffs should not get a second chance to put on more causation evidence. Giving Plaintiffs a second chance would prejudice the United States because Plaintiffs already had an opportunity to prove their case and failed to do so. It also would be futile given the Court's factual findings and Plaintiffs' own evidence. Plaintiffs cannot argue credibly that they experienced worse flooding due to the Corps' reservoir system operations post 2004 and river changes than the flooding they would have experienced had the Corps never taken *any* flood control actions on the Missouri River, such as the building of the Mainstem Reservoirs, the construction and repair of levees, and the implementation of the BSNP.[4]

---

[3] To be certain, Plaintiffs were allotted 140 hours to present their case. ECF No. 220 at 2 (Final Pre-Trial Order). And Phase I of this trial lasted 55 days and included over 95 witnesses and over 3,250 exhibits. *Ideker Farms, Inc.*, 2018 WL 1282417, at *1. The Court also heard eight days of closing arguments. *Id.*

[4] This is not surprising. Plaintiffs recognize the significant benefits the United States provided starting in the 1940's. Critically, Plaintiffs do not claim that these government-provided benefits were eliminated or that Plaintiffs are now in a worse position than before the United States took any action. Under the correct causation standard, Plaintiffs' own theory is self-defeating. Indeed, if all the allegations in the Amended Complaint are taken as true, the claim fails because it does not assert that Plaintiffs are in a worse position than if the United States had not taken any action. *See, e.g.*, Am. Compl. ¶¶ 366-68, ECF No. 21-1 (describing significant flooding problems, including biannual floods on the Missouri River in a channel that meandered).

This Court already has made significant relevant factual findings, including that "in its pre-regulated state, the Missouri River regularly flooded." *Ideker Farms, Inc.*, 2018 WL 1282417, at *11. It further found that, "[t]he River was known for its spring and summer rises," "flooding was common and widespread," and "[s]pring flooding tended to last one to two weeks and was relatively localized, whereas summer flooding lasted longer and inundated larger portions of the floodplain." *Id.* (citations and internal quotations omitted). Plaintiffs' experts agreed. *See, e.g.*, Tr. at 4491:14-16 (Christensen) (the River historically was "a braided, multi-channel river . . . [that] flooded regularly[.]").

The Court also found that "[t]o meet the demands of settlers and minimize flooding," the United States built a series of reservoirs that regulated flood flows, constructed and repaired levees that helped contain flooding, and implemented the BSNP that enabled navigation and benefited flood control and has operated for decades. *Ideker Farms, Inc.*, 2018 WL 1282417, at *2-4. The reservoirs serve multiple purposes, which include flood risk reduction. *Id.* Similarly, the federal levee system was constructed to help contain flooding in sections of the River below the reservoirs, *id.* at *2, and "runs continuously for 100 miles," *id.* at *39. The Court found that the BSNP aided navigation and flood control, *id.* at *3, and "led to the accretion of tillable farmland along the River . . . extending the land into what was previously water. Many of the properties involved in this litigation were created from the above-described accretion," *id.* at *10-11. This Court found, as Plaintiffs argued, that these measures all contributed to "flood control." *Id.* at *2. And since their implementation, flooding has been "less frequent and less severe." *Id.* at *11.[5]

---

[5] Numerous Plaintiffs testified about the benefits each have received from the United States' efforts in the Missouri River basin. *See, e.g.*, Tr. at 2242:8 to 2243:13 (Connealy) (testifying that the "Corps' channelization of the river and putting in the dams was like God sent us a present.

6

Plaintiffs already had an opportunity to establish causation and failed to meet their burden under the correct causation standard. The proper, just remedy is dismissal of all claims for failure of proof on causation. There is no prejudice to Plaintiffs because their own evidence and the Court's findings confirm the absence of causation under the proper legal standard. And in the face of their own allegations and findings by this Court, Plaintiffs cannot assert credibly that the flooding since 2004 has been worse than the flooding that would have occurred had the United States never acted.

## CONCLUSION

Plaintiffs and this Court failed to apply the correct causation standard, which required the causation analysis to include *all* government actions that reduce the risk of flooding along the Missouri River. This failure was clear legal error and, with respect to Plaintiffs, a failure of proof on a threshold legal issue. Therefore, the Court should reconsider its trial opinion under RCFC 59(a), vacate its findings on causation, and find that Plaintiffs' failure of proof requires dismissal of all Plaintiffs' claims.

Respectfully submitted this 14th day of May, 2018.

---

The financial viability of farming became real, and our family acquired more and more land to farm"); Tr. at 93:24 to 94:4 (Tobin) (explaining that the 1952 flood was more widespread because the dams had not yet been constructed); Tr. at 2342:9-25 (Schneider) (explaining that his farmland would not exist without the BSNP structures); Tr. at 4112:23 to 4113:7 (Ideker) (explaining that his father purchased the property because he knew "the river was going to be tamed and he saw an opportunity to buy this farm and invest in it, thinking the river was going to be tamed, the dams would be built and so he had an expected economic purpose.").

JEFFREY H. WOOD
ACTING ASSISTANT ATTORNEY GENERAL
United States Department of Justice
Environment & Natural Resources Division

 *s/ Terry M. Petrie*
TERRY M. PETRIE
CARTER F. THURMAN
EDWARD C. THOMAS
United States Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1369
Fax: (303) 844-1350
E-mail: Terry.Petrie@usdoj.gov

*Attorneys for United States*