# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

*Filed Electronically: May 31, 2018*

| | | |
|---|---|---|
| IDEKER FARMS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.:  1:14-cv-00183-NBF |
| v. | ) | |
| | ) | Senior Judge Nancy B. Firestone |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFFS' BRIEF REGARDING THE IMPACT OF *ST. BERNARD PARISH* ON PLAINTIFFS' MOTION FOR RECONSIDERATION**

                                                                                                  JEFFREY H. WOOD
                                                                                                  ACTING ASSISTANT ATTORNEY GENERAL
United States Department of Justice
Environment & Natural Resources Division

TERRY M. PETRIE
CARTER F. THURMAN
EDWARD C. THOMAS
United States Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1369
Fax: (303) 844-1350
E-mail: Terry.Petrie@usdoj.gov

*Attorneys for United States*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    The Causation Standard Requires Consideration of All Government Actions That Impact Flooding on Plaintiffs' Property. ........................................................ 2

          a.    To prove causation, Plaintiffs must consider "all" government actions that impact flood control regardless of the order of the actions ................................................................................................. 2

          b.    Plaintiffs cannot avoid their failure of proof on causation by making arguments unrelated to causation. .............................................................. 8

          c.    Dismissing Plaintiffs' claims for failing to prove causation is consistent with the purpose of the Fifth Amendment. ................................ 9

    II.   Plaintiffs' Case Depends, in Part, on the United States' Alleged Failure to Act. ........................................................................................................................ 10

CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Accardi v. United States*,
  599 F.2d 423 (Ct. Cl. 1979) ............................................................................................... 6

*Ark. Game & Fish Comm'n v. United States*,
  568 U.S. 23 (2012) ...................................................................................................... 9, 10

*Ark. Game & Fish Comm'n v. United States*,
  637 F.3d 1366 (Fed. Cir. 2011) ........................................................................................ 5

*Ark. Game & Fish Comm'n v. United States*,
  87 Fed. Cl. 594 (2009) ...................................................................................................... 9

*Arkansas Game & Fish Comm'n v. United States*,
  736 F.3d 1364 (Fed. Cir. 2013) ............................................................................. 2, 5, 6, 9

*Cary v. United States*,
  552 F.3d 1373 (Fed. Cir. 2009) ........................................................................................ 6

*Danforth v. United States*,
  308 U.S. 271 (1939) .......................................................................................................... 6

*Ideker Farms, Inc. v. United States*,
  No. 14-183L, 2018 WL 1282417 (Fed. Cl. Mar. 13, 2018) ..................................... 5, 6, 11

*John B. Hardwicke v. United States*,
  467 F.2d 488 (Ct. Cl. 1972) .......................................................................................... 2, 3

*Love Terminal Partners, L.P. v. United States*,
  No. 2016-2276, 2018 WL 2090316 (Fed. Cir. May 7, 2018) ......................................... 11

*Nat'l Mfg. Co. v. United States*,
  210 F.2d 263 (8th Cir. 1954) .......................................................................................... 10

*Nicholson v. United States*,
  77 Fed. Cl. 605 (2007) ...................................................................................................... 9

*St. Bernard Parish v. United States*,
  887 F.3d 1354 (Fed. Cir. 2018) ................................................... 1, 2, 3, 4, 5, 6, 7, 8, 10, 11

*United States v. Archer*,
  241 U.S. 119 (1916) .......................................................................................................... 2

*United States v. Sponenbarger*,
  308 U.S. 256 (1939) ............................................................................................... 2, 9, 10

**Statutes**

33 U.S.C. § 702c ................................................................................................................ 10

## INTRODUCTION

The Court should reject Plaintiffs' narrow interpretation of *St. Bernard Parish* because it misconstrues the holding and applicability of binding precedent.[1] Plaintiffs state it is "impossible" to show that the risk of flooding would be "greater after the construction of the System dams than beforehand." Pls.' Reply 33. Yet, *St. Bernard Parish* compels the Court to consider whether the flooding would have been greater in light of all government actions that impact flooding on plaintiffs' properties. Indeed, Plaintiffs add to this mistake in their motion for reconsideration by asking this Court to ignore the United States' flood-reducing actions—namely, the construction of reservoirs, the implementation of the Bank Stabilization and Navigation Project, and the construction and repair of hundreds of miles of levees—even though Plaintiffs admit those actions greatly benefit their properties: the very actions that *St. Bernard Parish* holds must be considered. Plaintiffs invite the Court to commit clear legal error.

## ARGUMENT

The Federal Circuit's decision in *St. Bernard Parish* dictates that this Court should deny Plaintiffs' motion for reconsideration for two independent reasons. First, Plaintiffs' proof of causation failed to account for all of the United States' actions that mitigated the impact of flooding on their properties. Second, Plaintiffs' case depends, in part, on the United States' alleged failure to act, which cannot serve as the basis of takings liability.

---

[1] The Federal Circuit's decision in *St. Bernard Parish* dictates that all of Plaintiffs' claims be dismissed, not just claims for flooding in 2011. This is the subject of the United States' pending motion for reconsideration of the Court's trial opinion. U.S. Mot. for Recons., ECF No. 435.

1

I.  **The Causation Standard Requires Consideration of All Government Actions That Impact Flooding on Plaintiffs' Property.**

As explained in *St. Bernard Parish*, the element of "[c]ausation requires a showing of 'what would have occurred' if the government had not acted." *St. Bernard Parish v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018) (quoting *United States v. Archer*, 241 U.S. 119, 132 (1916)); *accord United States v. Sponenbarger*, 308 U.S. 256, 266 (1939) (a takings plaintiff must prove that the government subjected his land to "additional flooding, above what would [have] occur[red] if the Government had not acted"). The Federal Circuit further held that when considering the comparative, no-government action condition, it is legal error for a plaintiff to focus on "isolated government actions" because the "causation analysis must consider the impact of the entirety of government actions that address the relevant risk." *St. Bernard Parish,* 887 F.3d at 1364-65 (citing several "cases [that] establish that the causation analysis must consider the impact of the *entirety* of government actions that address the relevant risk," including *Arkansas Game & Fish Commission v. United States,* 736 F.3d 1364 (Fed. Cir. 2013), and *John B. Hardwicke v. United States,* 467 F.2d 488 (Ct. Cl. 1972) (emphasis added)).

   a.  *To prove causation, Plaintiffs must consider "all" government actions that impact flood control regardless of the order of the actions.*

Despite the clarity afforded by *St. Bernard Parish*, Plaintiffs claim the Federal Circuit excepted cases like *Ideker* from its holding. Pls.' Reply 30. Plaintiffs rest their argument on the proposition that *St. Bernard Parish* "did not address scenarios like Ideker where the government action increasing the risk of flooding came after government action reducing such a risk." *Id.* Plaintiffs are wrong. They base their argument on a misinterpretation of the Federal Circuit's brief discussion of the *John B. Hardwicke* case, and ignore the main holding of *St. Bernard Parish*. The Federal Circuit acknowledged that *John B. Hardwicke* had "suggested" such a rule, but it made clear that this aspect of *John B. Hardwicke* was dicta (*i.e.*, a "suggest[ion]" that was

2

not necessary to the result, since the court ruled for the United States). *St. Bernard Parish,* 887 F.3d at 1367 n.14. And *St. Bernard Parish* certainly did not endorse that dictum—to the contrary, it expressly reserved judgment on "[w]hether the *John Hardwicke* approach is correct." *Id.* As discussed below, the fundamental logic of *St. Bernard Parish*—and the precedent on which the Federal Circuit relied—make clear that the *John B. Hardwicke* dicta is wrong and that Plaintiffs' reliance on that dicta does not cure their failure to prove causation.

*First*, Plaintiffs misinterpret the discussion of the *John B. Hardwicke* case in *St. Bernard Parish*. In *John B. Hardwicke*, a dam near plaintiffs' property decreased flood risk and then a second dam later increased flood risk. 467 F.2d at 488-89. In that case, the court properly looked at the overall impact of government action to determine that flood risk was still far less than if there had been no government action at all. *St. Bernard Parish*, 887 F.3d at 1364. In *St. Bernard Parish*, the Federal Circuit cited *John B. Hardwicke* to demonstrate "that the causation analysis must consider the impact of the *entirety* of government actions that address the relevant risk." 887 F.3d at 1364 (emphasis added) (citing *John B. Hardwicke*, 467 F.2d 488, after discussing the same concept in *Sponenbarger*). Plaintiffs ignore this overarching point and mistakenly state that the primary reason the *St. Bernard Parish* plaintiffs failed to prove causation was that they "ignor[ed] the impact of 'subsequent government action designed to mitigate that risk[.]'" Pls.' Reply 29 (emphasis in original) (quoting *St. Bernard Parish*, 887 F.3d at 1367). Plaintiffs' reasoning is not consistent with the Federal Circuit's direction to consider "the impact of the entirety of government actions that address the relevant risk." *St. Bernard Parish*, 887 F.3d at 1364. Likewise, Plaintiffs' reasoning ignores *St. Bernard Parish's* holding that it is legal error to focus on "isolated government actions" when considering the comparative, no government action condition. *Id.* Said differently, *St. Bernard Parish* does not

3

stand for the limited proposition that only subsequent government actions can mitigate risk in a causation analysis; *St. Bernard Parish* properly held that a plaintiff may not meet its burden to prove causation without accounting for all government actions that "address the relevant risk."[2]

Plaintiffs' fallacy is underscored by the section of the opinion on which Plaintiffs rely. The sentence and footnote they cite are located in the section of the opinion explaining that separate actions that are not the result of the same project must be considered if they are "directly related to preventing the same type of injury on the same property where the damage occurred." *Id.* at 1366. Absent from the Court's description of the holding is any distinction between the order of the actions. The Federal Circuit merely stated that it had no occasion to decide "whether the *John Hardwicke* approach is correct" because it was irrelevant to the *St. Bernard Parish* facts. *Id.* at 1367 n.14. Nothing more. Accepting Plaintiffs' position would require this Court to ignore binding Federal Circuit precedent, which is precisely what Plaintiffs have done.

*Second*, the remaining cases cited in *St. Bernard Parish* further reveal that there is no exception for the *Ideker* claims. Plaintiffs claim that "none of the cases cited by the Federal Circuit involved a factual situation where the Government . . . first *decrease[d]* and then *increase[d]* the risk of flooding generations later, as is the case in *Ideker*." Pls.' Reply 24-25 (emphasis in original). Plaintiffs are wrong again. As mentioned above, the Federal Circuit cited favorably *John B. Hardwicke*, which involved first a risk-decreasing action then a risk-increasing action, as an example of a case that properly considered all government action. The Federal Circuit also relied directly on *Arkansas Game & Fish Commission*, which involved a factual scenario similar to *Ideker*, in that the government actions that allegedly increased the risk

---

[2] The footnote Plaintiffs point to noting the *John B. Hardwicke* Court of Claims' suggestion that the ordering of risk-increasing and risk-reducing actions may matter in some situations is not the *St. Bernard Parish* holding. *St. Bernard Parish*, 887 F.3d at 1367.

4

of flooding took place many years after the risk-decreasing actions by the government. *St. Bernard Parish*, 887 F.3d at 1364-65 (citing *Ark. Game & Fish Comm'n*, 736 F.3d at 1372 n.2 ("clarify[ying] that the appropriate analysis for causation considers all governmental actions")).

In *Arkansas Game & Fish Commission*, the plaintiff claimed that the Army Corps of Engineers' ("Corps") operation of the Clearwater Dam ("Dam") during the 1990s caused increased flooding on its property. 736 F.3d at 1367-68. The Dam was constructed in the 1940s "for flood control purposes." *Id.* Shortly thereafter, the Corps adopted a water control plan to control river flows "to reduce the adverse effects of flooding in downstream areas." *Ark. Game & Fish Comm'n v. United States*, 637 F.3d 1366, 1367 (Fed. Cir. 2011), *rev'd and remanded by* 568 U.S. 23 (2012). Decades later, from 1993 until 2000, the Corps authorized deviations from the water control plan at the request of farmers that extended flooding on plaintiff's property. *Ark. Game & Fish Comm'n*, 736 F.3d at 1368. The deviations increased flooding beyond the natural pre-dam flooding patterns. *Id.* at 1371, 1372. In other words, after first *decreasing* the risk of flood damage (*i.e.*, the construction of the Dam), the Corps then *increased* the risk of flood damage generations later (*i.e.*, deviating from the water control plan in a way that increased flooding), resulting in flooding that was even worse than pre-dam conditions. *Id.* at 1372 n.2; *St Bernard Parish*, 887 F.3d at 1364-65 & n.11.

Here, Plaintiffs claim that the Corps' operation of reservoirs and modification of Bank Stabilization and Navigation Project ("BSNP") structures, since 2004, caused increased flooding on their properties. The Mainstem Reservoir System became fully operational in 1967. *Ideker Farms, Inc. v. United States*, No. 14-183L, 2018 WL 1282417, at *3 (Fed. Cl. Mar. 13, 2018). Construction of the BSNP structures began as early as 1890 and the project was deemed "complete" in 1981. *See* Tr. 7972:3-7974:11 (Remus); 8990:12-16, 8991:2-8 (Chapman). U.S.

5

Post-Trial Br. 15 (ECF No. 375).[3] The Court found that each of these structures benefitted and aided flood control. *Ideker Farms, Inc.*, 2018 WL 1282417, at *3. Decades later, in 2004 and 2006, the Corps changed the way it operated the reservoirs and physically altered some of the BSNP structures. *Id.* at *9-11. This Court found that these changes made flooding more severe than would have occurred without those changes. *Id.* at *103-05. In other words, decades after first *decreasing* the risk of flooding (*i.e.*, the construction of reservoirs, BSNP, and levees), the Corps then allegedly *increased* the risk of flooding (*i.e.*, by changing the water control manual and altering some of the BSNP structures). This is analogous to the timeline of events addressed in *Arkansas Game & Fish Commission* in which the Federal Circuit "clarified that the appropriate analysis for causation considers all government actions." *St. Bernard Parish*, 887 F.3d at 1364 (citing *Ark. Game & Fish Comm'n*, 736 F.3d at 1372 n.2).

Moreover, several additional cases cited by the Federal Circuit in *St. Bernard Parish* involve or favorably discuss similar timelines of initial risk-reducing and later risk-increasing activity. *See, e.g.*, *Cary v. United States*, 552 F.3d 1373, 1375 (Fed. Cir. 2009) (describing the numerous risk-reducing fire suppression techniques that occurred prior to the alleged risk-increasing fire suppression technique); *Danforth v. United States*, 308 U.S. 271, 286-87 (1939) (opining that a Fifth Amendment taking could occur if, after accounting for the benefits received from the previously-constructed riverside levees, the more-recently-constructed setback levees caused flooding greater than what would occur without *any* levees); *Accardi v. United States*, 599 F.2d 423, 429 (Ct. Cl. 1979) (explaining that plaintiffs failed to show that their property was not subjected to additional flooding in 1974 than what would have occurred prior to the

---

[3] The Corps also constructed and repairs a series of levees that help contain flooding. *Ideker Farms, Inc.*, 2018 WL 1282417, at *2, *102 n.51; *see also infra* p. 7-8.

6

construction or operation of a dam built in 1964). It was not an oversight that, after citing these cases, the Federal Circuit reiterated that "the causation analysis requires the plaintiff to establish what damage would have occurred without government action," without any delineation of the order of actions taken. *St. Bernard Parish*, 887 F.3d at 1363.

Even if Plaintiffs' reliance on dicta from *John B. Hardwicke* were correct, they incorrectly assume that all risk-reducing actions preceded the 2004 changes to the Master Manual and implementation of the Missouri River Recovery Program. Instead, the United States' actions that reduce the risk of flooding on Plaintiffs' properties have continued long after dam construction. Each year, the United States spends millions on the maintenance and operations of the dams and BSNP structures that reduce the risk of flooding on Plaintiffs' properties. Tr. 6549:12-6550:2, 6550:21-23, 6551:25-6552:5 (Ponganis); 9208:19-9209:8, 9211:19-21, 9212:7-9213:4 (Pridal); 8990:12-8991:1, 9016:23-9019:13 (Chapman). After each major flood, the Corps repairs and rebuilds the federal and non-federal levees that provide flood protection to Plaintiffs' properties. Tr. 12061:11-20, 12063:23-12064:18, 12065:12-25 (Flere); Tr. 12600:10-12602:5, 12613:14-19, 12613:19-21, 12617:18-12618:19, 12638:18-12639:4, 12641:19-22, 12642:22-25, 12644:5-8 (Kneuvean). Indeed, after federal and non-federal levees breached or overtopped in 2007, 2008, 2010, and 2011, the Corps rebuilt and setback levees to provide increased flood risk reduction in future years. Tr. 12639:24-12641:16, 12641:24-12642:13, 12643:6-7, 12644:10-16 (Kneuvean); 12066:24-12067:10, 12068:24-12069:12, 12075:6-19 (Flere). Following the 2011 flood, the Corps repaired the many BSNP structures damaged by the extreme flows. Tr. 9212:17-24, 9218:20-24, 9320:24-9321:15, 9326:10-24 (Pridal). Plaintiffs' argument, even if it were a correct statement of the law, improperly ignores

the myriad actions of the United States subsequent to dam construction that reduced the effects of flooding on their properties.[4]

Accepting Plaintiffs' claim that an exception exists based on a single sentence and footnote, requires this Court to ignore *St. Bernard Parish* and other cases that the Federal Circuit used to demonstrate the correct causation standard.

### b. *Plaintiffs cannot avoid their failure of proof on causation by making arguments unrelated to causation.*

After avoiding any mention of *Arkansas Game & Fish Commission* for purposes of causation, Plaintiffs argue that distinguishing *Ideker* from *St. Bernard Parish* is "consistent with, if not dictated by, the admonition in *Ark. Game & Fish II* that '[t]he determination whether a taking has occurred includes consideration of the property owner's distinct investment-backed expectations.'" Pls.' Reply 31.[5] On this basis, Plaintiffs effectively claim that the United States did not provide the appropriate level of flood protection. *Id.* ("Plaintiffs have reasonable investment-backed expectations of a certain level of flood control . . . ."). These arguments fail.

---

[4] The building and maintenance of a dam, or a similar flood-risk-reducing structure, is an ongoing benefit that usually requires significant investment for decades or more. This is certainly true in this case, where the Corps has repaired and improved the dams, levees, and BSNP structures. Plaintiffs' exclusive reliance on the date the Corps constructed flood-risk-reducing structures ignores the complex nature and requirements of those structures. Without the United States' support and improvement of those structures over many decades, they would not provide the same flood-risk-reducing benefit.

[5] Plaintiffs state that they each obtained "title to their lands well after the construction of the System and BSNP was completed." Pls.' Reply 32 n.11. But many Plaintiffs also obtained title to their lands *after* many of the complained of actions already occurred. *Compare* Column F of Tables 3-7 of U.S. Post-Trial Br. (ECF Nos. 375-3-7) *with* Table 1 of U.S. Post-Trial Br. (ECF Nos. 375-1) (showing years of Plaintiffs' acquisition and years of complained-of government action); *see also* U.S. Post-Trial Br. 13; Tr. 7867:25 to 7868:3 (Farhat) (explaining that releases for threatened and endangered species have occurred since 1986).

First, a plaintiff's reasonable investment-backed expectations, while a requirement for determining the United States' liability for a taking, do not supplant or transform the separate element of causation.[6] *Ark. Game & Fish Comm'n*, 568 U.S. at 38.  In fact, the plaintiff in *Arkansas Game & Fish Commission* did not acquire its property until after construction of the Dam.  736 F.3d at 1372 n.2; *Ark. Game & Fish Comm'n v. United States*, 87 Fed. Cl. 594, 600-03 (2009), *aff'd*, 736 F.3d 1364 (Fed. Cir. 2013).  Second, Plaintiffs certainly do not hold a property interest protected by the Fifth Amendment in a certain level of federal flood control that could somehow be "taken" if that federal flood protection was reduced.  Claims that Plaintiffs have a reasonable investment-backed expectation in the government providing a certain level of flood protection amount to a claim that the United States owes a duty to Plaintiffs to provide that protection, and allegations that the government has not done so amount to a claim in tort. *Nicholson v. United States,* 77 Fed. Cl. 605, 624, (2007) (quoting *Sponenbarger*, 308 U.S. at 266).

### c. *Dismissing Plaintiffs' claims for failing to prove causation is consistent with the purpose of the Fifth Amendment.*

Lastly, Plaintiffs argue that extending *St. Bernard Parish* to the situation here is inappropriate because "no claim of taking by flooding with respect to the Missouri River, practically speaking, could ever be maintained if *SBP* were applied so broadly."  Pls.' Reply 33.  Plaintiffs posit that "it would be impossible for a situation to arise where the risk of flooding would be greater after the construction of the System dams than beforehand." *Id.*  This argument

---

[6] Plaintiffs seemingly concede this point when noting that this Court "recognize[d] that the issues of the severity and duration of the flooding; the reasonable expectation of flooding, including *reasonable investment backed expectations*; and the net benefits analysis . . . *are part of determining the appropriation element, not the causation element*. . . ."  Pls.' Reply 25 n.8 (emphasis added).

is a *non sequitur* and irrelevant: the fact that Plaintiffs' claims fail does not mean any potential claim would fail.  As Justice Ginsburg recognized in *Arkansas Game & Fish Commission*, not every plaintiff will satisfy the requirements to establish a Fifth Amendment taking.  568 U.S. at 37.

The fact that Plaintiffs' claims fail under the causation standard is not a flaw in the causation standard; it is a flaw in Plaintiffs' claims.  Plaintiffs' concession that government action has conferred so many benefits on their properties that it would be "impossible" to show their flooding was worse than if the government had never acted requires dismissal of their claims—and is exactly the right outcome.  It is undisputed that Plaintiffs' properties are better off than had the United States never built the reservoirs, BSNP, and levees.  To hold the United States liable here when Plaintiffs concede they would be worse off had the government never built those structures would "far exceed even the 'extremist' conception of a 'taking' by flooding within the meaning of the Fifth Amendment." [7]  *St. Bernard Parish*, 887 F.3d at 1364 (quoting *Sponenbarger*, 308 U.S. at 265).  As such, Plaintiffs' claims must be rejected and their motion for reconsideration denied.

## II.     Plaintiffs' Case Depends, in Part, on the United States' Alleged Failure to Act.

"[T]akings liability does not arise from government inaction or failure to act," it "must be premised on affirmative government acts."  *Id.* at 1361.  The Federal Circuit reconfirmed this

---

[7] Before building flood control infrastructure across the country, Congress contemplated in the 1928 Flood Control Act that the United States would not be liable for flooding.  33 U.S.C. § 702c ("No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place").  In enacting that legislation, Congress evinced a desire to fund flood risk mitigation projects, but only if doing so would not subject the federal government to future liability based on the operation of flood-control projects.  *See Nat'l Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir. 1954).

long-standing principle in *Love Terminal Partners, L.P. v. United States*, No. 2016-2276, 2018 WL 2090316, at *5 (Fed. Cir. May 7, 2018).

For example, in *St. Bernard Parish*, plaintiffs unsuccessfully argued that the United States' alleged "decisions not to armor the banks and not to repair erosion along the banks [of a navigation channel] caused the channel to widen, which allowed [the channel] to 'carry significantly more water at higher velocities.'" 887 F.3d at 1360 (citation omitted).  The plaintiffs also asserted that the government's alleged "failure to maintain" the channel caused their properties to flood: "Thus, the government's failure to properly maintain or to modify the banks played a significant role in plaintiffs' takings theory and the Claims Court's analysis." *Id.*

Here, Plaintiffs claim their "theory and proof of causation is predicated on the affirmative acts . . . [that] consist of alleged System and BSNP Changes," but this ignores Plaintiffs' own evidence.  Pls.' Reply 27-28.  As the Court correctly noted, Plaintiffs' expert's opinion that the Corps' actions caused increased water surface elevations was based, in part, on the "failure to maintain [the BSNP]." *Ideker Farms, Inc.*, 2018 WL 1282417, at *38.  As such, Plaintiffs' claims depend on the United States' alleged failure to act, which cannot serve as the basis of takings liability.  Because Plaintiffs have not proven their claims based entirely on affirmative acts, their claims fail, and their motion for reconsideration should be denied.

## CONCLUSION

The Federal Circuit's decision in *St. Bernard Parish* dictates that Plaintiffs' motion for reconsideration be denied.  Plaintiffs' causation proof failed to account for all of the United States' actions that impacted flood control on their properties, and their case depends, in part, on the United States' alleged failure to act, which cannot serve as the basis of takings liability.

Respectfully submitted this 31st day of May, 2018.

                                        JEFFREY H. WOOD
                                      ACTING ASSISTANT ATTORNEY GENERAL
                                      United States Department of Justice
                                      Environment & Natural Resources Division

                                      *s/ Terry M. Petrie*
                                      TERRY M. PETRIE
                                      CARTER F. THURMAN
                                      EDWARD C. THOMAS
                                      United States Department of Justice
                                      Environment & Natural Resources Division
                                      999 18th Street
                                      South Terrace, Suite 370
                                      Denver, CO 80202
                                      Tel: (303) 844-1369
                                      Fax: (303) 844-1350
                                      E-mail: Terry.Petrie@usdoj.gov

                                      ***Attorneys for United States***