## IN THE U.S. COURT OF FEDERAL CLAIMS

---

### CASE NO. 1:14 –CV-00183-NBF
### Senior Judge Nancy B. Firestone

---

### IDEKER FARMS, INC., et al.

**Plaintiffs,**

v.

### UNITED STATES

**Defendant.**

---

### BELLWETHER PLAINTIFFS' COMBINED REPLY TO THE "UNITED STATES' RESPONSE TO PLAINTIFFS' BRIEF REGARDING THE IMPACT OF ST. BERNARD PARISH ON PLAINTIFFS' MOTION FOR RECONSIDERATION" AND SURREPLY TO "UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION"

---

R. Dan Boulware
    **Attorney of Record**
Edwin H. "Eddie" Smith
    of Counsel
Seth C. Wright
    of Counsel
R. Todd Ehlert
    of Counsel
**Polsinelli PC**
**3101 Frederick Avenue**
**St. Joseph, MO 64506**
**Telephone:  (816) 364-2117**
**Fax:          (816) 279-3977**
**E-mail:** dboulware@polsinelli.com
    esmith@polsinelli.com
    scwright@polsinelli.com
    tehlert@polsinelli.com

Benjamin D. Brown, DC 495836
    of Counsel
Laura Alexander, DC 988950
    of Counsel
**Cohen Milstein Sellers & Toll PLLC**
**1100 New York Avenue, NW**
**Suite 500**
**Washington, D.C. 20005**
**Telephone:   (202) 408-4600**
**Fax:          (202) 408-4699**
**E-mail:** bbrown@cohenmilstein.com
    lalexander@cohenmilstein.com

### ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................1

II.   GOVERNMENT'S ARGUMENTS IN ITS "RESPONSE TO PLAINTIFFS'
      BRIEF REGARDING THE IMPACT OF *ST. BERNARD PARISH* ON
      PLAINTIFFS' MOTION FOR RECONSIDERATION"....................................................2

      A.    Government's Erroneous Contention: "The Causation Standard Requires
            Consideration of All Government Actions That Impact Flooding on
            Plaintiffs' Property." .........................................................................................3

      B.    Government's Contention:  Plaintiffs' Case Depends, in Part, on the
            United States' Alleged Failure to Act. ..............................................................17

III.  GOVERNMENT'S ARGUMENTS IN ITS "REPLY IN SUPPORT OF ITS
      MOTION FOR RECONSIDERATION" ....................................................................188

      A.    Government's Contention:  "The Proper Causation Standard Requires
            Consideration of All United States Actions That Address the Risk of
            Flooding on Plaintiffs' Property." ....................................................................18

      B.    Government's Argument:  "The Proper Causation Standard Does Not
            Conflict with the *Miller* Doctrine, Or Any Other Precedent." ...........................19

      C.    Government's Argument:  "The Proper Causation Standard Is Not an
            Impermissible Exclusionary Rule." ...................................................................19

IV.   CONCLUSION .............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardi v. United States*,
   599 F.2d 423 (Ct. Cl. 1979) ............................................................................................... 12

*Ark. Game & Fish Comm'n v. United States II*,
   568 U.S. 23 ...................................................................................................... *passim*

*Ark. Game & Fish Comm'n v. United States III*,
   736 F.3d 1364 ................................................................................................... 5, 12

*Cary v. United States*,
   552 F.3d 1373 (Fed. Cir. 2009) ......................................................................................... 12

*Danforth v. United States*,
   308 U.S. 271 (1939) .............................................................................................................. 12

*John B. Hardwicke Co. v. United States*,
   467 F.2d 488 (Ct. Cl. 1972) ............................................................................................ *passim*

*King v. Erickson*,
   89 F.3d 1575 (Fed. Cir. 1996), rev'd on other grounds,
   *LaChance v. Erickson*,
   522 U.S. 262 (1998) ............................................................................................................... 9

*King v. United States*,
   427 F.2d 767 (Ct. Cl. 1970) .................................................................................................. 5

*Nat'l Am. Ins. Co. v. United States*,
   498 F.3d 1301 (Fed.Cir. 2007) ............................................................................................ 9

*St. Bernard Par. Gov't v. United States*,
   887 F.3d 1354 (Fed. Cir. 2018) ................................................................................... *passim*

*United States v. Miller*,
   317 U.S. 369 (1943) ...................................................................................................... 10, 19

*United States v. Reynolds*,
   397 U.S. 14 (1970) ............................................................................................................. 10

*United States v. Sponenbarger*,
   308 U.S. 256 (1939) ............................................................................................................. 14

## I.      Introduction

The Government, in its Response, **ECF No. 435**, and its "Motion for Reconsideration[,]" **ECF No. 436**, both filed on May 14, 2018, makes the same contention – that Plaintiffs' claims should be dismissed because they do not satisfy the correct legal standard for assessing "but-for" causation in accordance with *St. Bernard Parish* ("*SBP*").  *St. Bernard Par. Gov't v. United States*, **887 F.3d 1354 (Fed. Cir. 2018)**.  *SBP* held that the plaintiffs failed to apply the correct causation standard in two separate respects: (1) they relied, in part, on government inaction, rather than relying solely on affirmative government acts ("affirmative-acts" reason/standard), *id. at 1357*; and (2) they failed to assess the impact of *all* flood risk-reducing government actions, namely, the construction of the LPV  project ("all-acts" reason/standard).  *Id.* at 1362-64. However, the Government chose to bring its Motion for Reconsideration on an affirmative-acts causation reason only.  Specifically, the Government alleged only that Plaintiffs failed to account for the Government's *preceding* flood risk-reducing actions of constructing the Missouri River Mainstem Reservoir System ("System") dams, the federal levees, and the Bank Stabilization and Navigation Project ("BSNP.")[1]  **U.S. Mot. for Recons., ECF No. 436 at 2**.

In Plaintiffs' Combined Response of May 31, 2018, **ECF No. 440**, filed on May 31, 2018, they refuted the Government's initial "bare bones" *SBP* all-acts causation allegation and argument for dismissal.  Subsequently, however, in its "Response to Plaintiffs' Brief Regarding the Impact of *St. Bernard Parish* on Plaintiffs' Motion for Reconsideration," **ECF No. 441**, filed on May 31, 2018, and its "Reply in Support of Its Motion for Reconsideration," **ECF No. 442**, filed on June 15, 2018, the Government alleged *for the first time*, without requesting leave to

---

[1]The Government's contention and bare bones argument in support of its Motion for Reconsideration is expressly incorporated by reference in its Response in opposition to Plaintiffs' Motion for Reconsideration.  **U.S. Resp. to *SBP*, ECF No. 435 at 1** ("For the reasons stated in the United States' Motion for Reconsideration, ECF No. 436, this Court should deny Plaintiffs' motion and dismiss all Plaintiffs' claims.")**.**

amend its Motion, that Plaintiffs' claims should also be dismissed for an affirmative-acts causation reason.[2]  The Government does not assert any basis for excusing its omission of this separate and distinct ground for its Motion that would allow it to raise it at this late stage; accordingly, it is waived.  In any event, as discussed below, this allegation and the arguments of the Government in opposition to Plaintiffs' Motion for Reconsideration and in support of its own Motion do not support a dismissal of Plaintiffs' claims pursuant to *SBP*.  Hence, because the Government's Motion for Reconsideration is based solely upon *SBP* causation reasons, it should be denied in all respects.  And, to the extent the Government relies on those reasons to oppose Plaintiffs' Motion for Reconsideration, they should be ignored as meritless.[3]

## II.   Government's Arguments in Its "Response to Plaintiffs' Brief Regarding the Impact of *St. Bernard Parish* on Plaintiffs' Motion for Reconsideration"

In its Response to Plaintiffs' Opening *SBP* Brief, **ECF No. 441**, the Government raised several arguments in support of dismissing all of Plaintiffs' claims based upon the previously alleged *SBP* all-acts causation reason.  In addition, the Government, for the first time, alleges a *SBP* affirmative-acts causation reason for dismissal.  This is the first opportunity for Plaintiffs to respond/reply to the same.  For the reasons discussed below, all of the Government's *SBP* causation allegations and arguments for dismissal are without merit.

---

[2]In this brief, Plaintiffs reply/surreply only to the new *SBP* arguments of the Government raised in its Response in opposition to Plaintiffs' Motion for Reconsideration and in its Reply in Support of its Motion for Reconsideration, to which Plaintiffs have not previously had the opportunity to reply/surreply and do not raise any new arguments as to the same that would require any additional *SBP* briefing by the Government.

[3]For the sake of clarity, Plaintiffs will first reply to the *SBP* arguments the Government raises in its Response to Plaintiffs' Opening *SBP* Brief in the same order they appear in the Response.  Plaintiffs will then surreply to the Government's arguments in support of its Motion for Reconsideration in the same order they appear therein.  Of course, where there is a duplication of an argument, that will be noted and the argument will only be addressed by Plaintiffs once to avoid redundancy.

A. **Government's Erroneous Contention: "The Causation Standard Requires Consideration of All Government Actions That Impact Flooding on Plaintiffs' Property."**

Relying on *SBP*, the Government erroneously contends as to its all-acts causation reason for dismissing Plaintiffs' claims that they failed to prove the causation of their claims because they did not account for *all* the Government's actions in managing the River to reduce flooding, specifically, the Corps' construction of the System dams, the federal levees, and the BSNP. **U.S. Resp., ECF No. 441 at 1.** The Government's contention rests on an overly broad and naively simplistic reading of *SBP* and is wrong.

*SBP* does hold that based upon the particular facts and circumstances of that case, the *SBP* plaintiffs in proving that the construction and failure to maintain MRGO caused the flooding in question, had to account for the "impact" of all the flood risk-reducing government actions in managing the channel, specifically, the subsequently constructed yet contemplated LPV project. *SBP*, **887 F.2d at 1363-64, 1367-68.** Hence, in the context of the requisite but-for comparison of flooding to establish causation, the Federal Circuit held that to account for that impact, the plaintiffs had to prove that the flooding in question would have been less had the Government *not acted at all* with respect to managing the channel to provide flood control, *i.e.*, if it had not constructed the LPV project. *Id.* **at 1362-65.**

The Government, seizing on the Federal Circuit's treatment of the concept of "impact" as a component of the requisite but-for causation comparison, contends that pursuant to *SBP*, the relevant flood risk-reducing government actions to be considered are all actions *from the beginning of time* that had any impact on reducing flooding, *regardless of their order of occurrence or chronology.* Hence, the Government argues that the requisite but-for flooding comparison to establish causation required Plaintiffs to compare the flooding that occurred *with* the MRRP Changes (the alleged *subsequent* flood risk-increasing actions) to the flooding that

would have occurred not only *without* the MRRP Changes, but *without* the System dams, the federal levees, and the BSNP – the flooding that would have occurred given the natural state of the River.  In so arguing, the Government submits that this is a hard and fast rule or standard of causation adopted by the Federal Circuit that it intended to be applied for assessing causation regardless of the particular facts and circumstances of the takings case in question, including those found by this Court in *Ideker*.  Besides being illogical, given the accepted underpinnings of takings causation jurisprudence, any fair reading of *SBP* simply does not support the Government's contention and arguments in support of the same.

Plaintiffs do not dispute that, in establishing causation, they made no comparison to the flooding that would have occurred *without* the System dams, the federal levees, and the BSNP, but contend they were not required to under the correct standard for assessing causation. Plaintiffs do, however, strenuously dispute the Government's argument that they had no legal basis for doing so, but were simply cherry picking the government acts they wanted to include in their assessment of causation, not those required.  To establish causation, Plaintiffs compared the actual flooding that occurred *with* the MRRP Changes to the flooding that would have occurred *without* them, because the MRRP Changes were the government acts at issue with respect to causation given their alleged theory of causation and the applicable law implicated thereby. However, in Plaintiffs' but-for comparison for proving causation, the "impact" of every government act on flooding was, indeed, taken into consideration, as the record reflects. [4] Plaintiffs' approach as to their but-for comparison was logical, both legally and factually,

---

[4]As Plaintiffs' have discussed throughout, while a factor may have an "impact" on the flooding that is being compared as part of the requisite but for comparison, it may not be a "but for" factor in that while it might have some impact, the flooding in question was going to happen regardless of whether that factor did or did not exist.  In proving their claims as to causation, Plaintiffs included any and all factors that impacted the flooding in any way, including the impacts of the *existing* System dams, the federal levees, and the BSNP, as well as the impacts of the Corps' policies and procedures in operating the System and operating and maintaining the BSNP.

because their theory of causation, which this Court has recognized, is predicated on what the impact of the MRRP Changes were in altering the existing flooding patterns of the River *at the time*, not the flooding patterns *at the beginning of time*, as the Government contends is correct under the all-acts standard.  *See Ark. Game & Fish Comm'n v. United States II*, **568 U.S. 23, 29;** *Ark. Game & Fish Comm'n v. United States III*, **736 F.3d 1364, 1372-74;** *King v. United States*, **427 F.2d 767, 769 (Ct. Cl. 1970)** (recognizing that the key to establishing causation is whether there has been in change in the existing flooding pattern of the river).

Contrary to the Government's contentions, any fair reading of *SBP* reveals that the Federal Circuit deliberately left open the question of whether the all-acts causation standard enunciated and applied in *SBP* would also apply in a case like *Ideker* or whether an exception would apply.  Indeed, the Federal Circuit in *SBP* cited to *John B. Hardwicke Co. v. United States*, **467 F.2d 488, 490-91 (Ct. Cl. 1972)** as having "suggested" a different causation "approach" to determine if a different standard for assessing causation would apply, other than the all-acts standard, where, unlike in *SBP*, the flood risk-reducing action in question was *not* subsequent to, but *preceded* the alleged flood risk-increasing action.  ***SBP*, 887 F.3d at 1367 n.14**.  The Federal Circuit recognized that under that approach, flood risk-reducing actions do not have to be considered *if two predicates are met*: (1) the flood risk-increasing action alleged *did <u>not</u> precede* the flood risk-reducing government action in question (the "chronology predicate"); **<u>and</u>** (2) the alleged flood risk-increasing action *was <u>not</u> contemplated* at the time of that flood risk-reducing action (the "contemplation predicate").[5]  *Id.*  And, of course, this is the precise factual situation at issue in this case, where the flood risk-reducing acts, which the

---

[5]Logically, of course, if the chronology predicate is not met, the contemplation predicate becomes irrelevant inasmuch as a subsequent flood risk-reduction action must be considered under either the all-acts or the *Hardwicke* standard for assessing causation.

Government asserts must be included in the but-for causation comparison, predated for generations the flood risk-increasing actions alleged as causing the flooding in question, the MRRP Changes, that were in no way contemplated at time of those flood risk-reducing actions.

Making the application of the ***Hardwicke*** standard for assessing causation contingent on satisfying the two factual predicates of the ***Hardwicke*** test makes perfect sense in light of the reasonable expectation of flooding factor that must be considered in the net-benefits analysis of causation that was adopted by ***SBP***.  As discussed at length in Plaintiffs' Response, **ECF No. 440 at 8-11**, where a government flood risk action occurs *after* another action, rather than *before* it, there can be no consideration or contemplation of the impact of that subsequent action, if any, at the time of the *prior* action, that would shape an expectation of flooding, **<u>unless</u>** a sufficient "nexus" can be established between the two from which the likelihood or certainty of that impact can be reasonably inferred.  Hence, the "contemplation" predicate is a codification of the "reasonable expectation" of flooding factor.  The inquiry being, as framed by that codification, whether there was a sufficient "nexus" between the *preceding* flood risk-reducing action and the *subsequent* flood risk-increasing action that the plaintiff, at the time of the flood risk-reducing action, contemplated (knew or should have known) that while the property in question would likely benefit from the flood risk-reducing action in question, it would also be disadvantaged by the contemplated subsequent flood risk-increasing action alleged.  *See **Hardwicke**, **467 F.2d at 491***; ***SBP**, **887 F.3d at 1364***.

The Federal Circuit, in discussing the ***Hardwicke*** approach in ***SBP*** as a possible correct approach to determining the standard for assessing causation in certain circumstances, determined that it was not necessary to decide that issue in deciding ***SBP*** because its facts did not satisfy either predicate of the ***Hardwicke*** test for applying the ***Hardwicke*** standard as an

exception to the all-acts standard, choosing to leave that issue for another day.  Plaintiffs submit that the Government has essentially admitted this point in stating that the Federal Circuit "reserved judgment on '[w]hether the *John B. Hardwicke* approach is correct." **U.S. Resp., ECF No. 441 at 3** (*quoting SBP*, **887 F.3d at 1367 n.14**).

In citing *Hardwicke* for the proposition that the causation test and standard "suggested" by the Court of Federal Claims in that case might be the correct approach for assessing causation under different facts than *SBP*, without deciding whether it was or was not, the Federal Circuit was clearly signaling that it was *not* deciding that the all-acts causation standard that applied in *SBP* also applied to *Ideker* factual situations, as the Government contends.  Experience teaches that it makes no sense for an appellate court, having decided an issue based upon a certain analysis of the facts of the case at bar, to suggest that another approach might be the correct approach if the facts were otherwise, if it intended for its analysis and decision in the case at bar to extend to all factual situations, without exception.  Hence, while Plaintiffs recognize that the Federal Circuit did not address the issue of whether the *Hardwicke* standard applied in an *Ideker* factual situation, although the *Hardwicke* court did, it is clear that it did not hold, as the Government contends, that the all-acts standard is to be applied in all factual situations, without exception, including in *Ideker* factual situations. The Government does not point to anything in *SBP* from which it can be reasonably inferred that it expressly or impliedly overruled *Hardwicke* and its approach to assessing causation in cases involving *Ideker* factual situations.

Under the facts of *Ideker*, as found by the Court, *both* of the predicates of the *Hardwicke* test are met.  Accordingly, under *Hardwicke* and *consistent with SBP*, this Court was correct to apply the *Hardwicke* standard in determining the causation of Plaintiffs' claims in this case such that the correct but-for comparison was the one employed by Plaintiffs' proof.  There can be no

reasonable dispute that the alleged flood risk-increasing actions alleged, the MRRP Changes, *did not precede* the flood risk-reducing actions, the construction of the System dams, the federal levees, and the BSNP, which the Government argues should have been included in Plaintiffs' but-for comparison for assessing causation.  Likewise, there can be no reasonable dispute that the MRRP Changes were *not* contemplated at the time of those flood risk-reducing actions.  There is no evidence in the record that would show a recognized and sufficient nexus between the MRRP Changes and the construction of the System dams, the federal levees, and the BSNP that would demonstrate any contemplation of the MRRP Changes at the time of those flood risk-reducing acts.

The Government raises three arguments in its Response to support its **SBP** all-acts causation reason for dismissing Plaintiffs' claims, which are discussed below.  None of them support applying the **SBP** all-acts standard for assessing causation in this case, as urged by the Government.

> ### 1. Government's Erroneous Argument: "To prove causation, Plaintiffs must consider 'all' government actions that impact flood control regardless of the order of the actions."

The Government argues that Plaintiffs' reliance on the **Hardwicke** test and standard is misplaced; specifically, their reliance on the chronology of the flood risk government actions, as being a factor in determining the standard to be applied for assessing causation, is misplaced because that discussion in **Hardwicke** was mere *dicta* since the court there ruled for the Government and applied the all-acts standard.  It also argues that Plaintiffs' reliance on **Hardwicke** is misplaced because the Federal Circuit in **SBP** "did not endorse [its] dictum."[6] **U.S. Resp., ECF 441 at 2-3**.  The Government's argument is confused and wrong on both counts.

---

[6]The Government's *dicta* argument appears to attach importance to the fact that the Federal Circuit used the term "suggested" in citing to **Hardwicke**.  However, it does not cite any

Generally, *dicta*, is defined as "statements made by a court that are unnecessary to the decision in the case, and therefore[,] not precedential."[7] ***Nat'l Am. Ins. Co.*, 498 F.3d at1306** (citations omitted); *see also* ***King v. Erickson*, 89 F.3d 1575, 1582 (Fed. Cir. 1996),** *rev'd on other grounds*, ***LaChance v. Erickson*, 522 U.S. 262 (1998)** (*dicta* are "[w]ords of an opinion entirely unnecessary for the decision of the case." (*quoting* **Black's Law dictionary 1072 (6th ed. 1990)**)). Under this definition of *dicta*, the ***Hardwicke*** causation discussion would not be *dicta*, as the Government contends.

In ruling for the Government, the ***Hardwicke*** court followed the ***Hardwicke*** test to the letter and applied the all-acts standard because, unlike in ***Ideker***, the plaintiff there could not satisfy the contemplation predicate of the test – that the flood risk-increasing action (the second dam) was *not* contemplated at the time of the flood-risk reducing action (the first dam). Hence, the court, in ruling for the Government and applying the all-acts standard, did not find that the chronology of the flood risk government actions events was irrelevant to assessing causation, as the Government argues here, rather it ruled for the Government because the contemplation predicate was not satisfied so as to trigger the application of the ***Hardwicke*** standard.

The ***Hardwicke*** result squares perfectly with Plaintiffs' contention that the ***Hardwicke*** standard should apply in this case rather than the all-acts standard. Under Plaintiffs' contention and the ***Hardwicke*** test, if the chronology predicate is met, but the contemplation predicate is not, as in ***Hardwicke***, then the all-acts standard applies. However, under Plaintiffs' contention,

---

authority or state the logic of why that would be important. Moreover, its argument ignores the fact that whether words in an opinion are *dicta* has to be determined in the context of the holding– what was the holding and were the words in question relevant to that holding. ***Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed.Cir. 2007).** The causation discussion in ***Hardwicke*** relied upon by Plaintiffs does not square with the definition of *dicta*. Rather, it is a critical discussion germane to the decision reached in ***Hardwicke***.

[7]While *dicta* is not precedential, it can still be persuasive on an issue. ***Nat'l Am. Ins. Co.*, 498 F.3d at 1306.**

where, as in *Ideker*, both predicates are met, then the **Hardwicke** standard does apply. Hence, contrary to the Government's argument, in both instances, the chronology of the flood risk actions is relevant in determining which standard should be applied under the **Hardwicke** test. Thus, the causation discussion in **Hardwicke** relied upon by Plaintiffs is anything but *dicta* in that it went to the heart of why the court there applied the all-acts standard. And, for that same reason, the court's ruling for the Government, in keeping with the **Hardwicke** approach and test, did not make it *dicta*. Moreover, the Government's *dicta* argument overlooks the fact that **Hardwicke** is but one of a long line of cases championing the application of the **Hardwicke** standard in *Ideker* factual situations, which must be followed by this Court since they were not reversed by **SBP**. *See, e.g.*, **United States v. Miller, 317 U.S. 369 (1943); United States v. Reynolds, 397 U.S. 14 (1970);** *see also* **Pls.' Resp., ECF No. 440 at 6-13** (citing cases)**.**

The Government also contends that Plaintiffs cannot rely upon the **Hardwicke** test and standard in this case because **SBP** "certainly did not endorse [that] dictum[.]"[8]   **U.S. Resp., ECF No. 441 at 3**. First, as discussed above, the discussion in **Hardwicke** as to the standard for assessing causation is not *dicta*. Second, whether Plaintiffs' reliance on **Hardwicke** is misplaced is in no way contingent on the Federal Circuit in **SBP** endorsing the **Hardwicke** test and standard. Plaintiffs are legally and factually justified in relying on the **Hardwicke** approach even though the Federal Circuit did not "endorse" it by affirming **Hardwicke** in deciding **SBP**, because it was not necessary. **Hardwicke**, along with its approach for assessing causation recognized therein, is good law.

---

[8]If the Government were right, no opinion by the Court of Federal Claims would be precedential or persuasive until affirmatively "endorsed" by the Federal Circuit at some unknown time in the future or in the case of a decision by the Federal Circuit when ultimately endorsed by the Supreme Court. That makes no sense, but if that were the case, then the Government's reliance on **SBP** is misplaced since it has yet to be endorsed by the Supreme Court. The Government cannot have it both ways. Moreover, the Government has effectively conceded that **SBP** did not overrule **Hardwicke**. *See* **U.S. Resp., ECF No. 441 at 3.**

By expressly citing to *Hardwicke* and noting that it was not addressing whether the alternative *Hardwicke* approach was the correct approach for assessing causation, the Federal Circuit left *Hardwicke* and its test and standard for assessing causation undisturbed, which is what Plaintiffs are relying upon in contending that their theory and proof of causation applied the correct standard and is not contrary to *SBP*.   In declining to affirm (endorse) or reverse *Hardwicke*, as being unnecessary to its holding in *SBP*, the Federal Circuit, in citing it and analyzing the *SBP* facts under the *Hardwicke* approach, clearly confirms Plaintiffs' contention that *SBP* does not address what standard of causation is to be applied in *Ideker* factual situations and certainly did *not* hold that the all-acts standard applied to *Ideker* factual situations, as the Government argues.   In fact, its actions signaled just the opposite.

In support of its argument that the all-acts standard for assessing causation applies across the board and that no standard has been recognized as an exception thereto, specifically, that the *Hardwicke* standard is not a recognized exception to the all-acts standard for cases involving factual situations like *Ideker*, the Government cites several cases, including *Hardwicke*.   It cites them for the proposition that even where the *Hardwicke* test is satisfied, the courts in those cases nonetheless applied the all-acts standard, which means they did not recognize or honor the *Hardwicke* exception to the all-acts standard in *Ideker* factual situations, touted by Plaintiffs. However, logically for those cases to support the Government's argument, they would have to involve facts, like those in *Ideker*, that satisfied *both* predicates of the *Hardwicke* test **and** yet the court still applied the all-acts standard.   However, none of the cases cited by the Government involve such facts and are *not* like *Ideker*.   Hence, the Government's reliance on them as supporting its no-exception argument is misplaced.

11

The Government first cites *Hardwicke*, where the court found that the facts were sufficient to satisfy the chronology predicate, but *not* the contemplation predicate (the court found that the second dam was contemplated at the time of the construction of the first dam). Accordingly, *Hardwicke* does not support the Government's no-exception argument that the all-acts standard will apply *even where the **Hardwicke** test is satisfied*. Rather, it supports Plaintiffs' contention that the all-acts standard applies, **except** where *both* predicates are satisfied, then the *Hardwicke* standard applies.

The Government next cites *Ark. Game & Fish III* in support of its no-exception argument; however, factually, it is just like *Hardwicke* with respect to the Government's no exception argument, that although the chronology predicate is satisfied, the contemplation predicate is not. There was no finding, and there could be none given the facts, to satisfy the contemplation predicate. Hence, *Ark. Game & Fish*, like *Hardwicke*, does not support the Government's no-exception argument that the all-acts standard will apply *even where the **Hardwicke** test is satisfied*.

The Government cites three additional cases in support of its no-exception argument: (1) *Cary v. United States*, **552 F.3d 1373, 1375 (Fed. Cir. 2009)**; (2) *Danforth v. United States*, **308 U.S. 271, 286-87 (1939)**; and (3) *Accardi v. United States*, **599 F.2d 423, 429 (Ct. Cl. 1979)**. However, just like *Hardwicke* and *Ark. Game & Fish* none of them involved a factual situation that satisfied both predicates of the *Hardwicke* test yet the court nonetheless applied the all-acts standard rather than the *Hardwicke* standard. Hence, none of these cases support the Government's no-exception argument.

Finally, as to the significance of the chronology of the Government's flood risk actions in assessing causation, the Government argues that even if Plaintiffs are correct that the *Hardwicke*

standard applies, Plaintiffs in proving causation still had to account for all the flood risk-reducing acts of the Government that occurred *subsequent* to the implementation of the MRRP in 2004, which they failed to do.  This argument that Plaintiffs failed to take into account all of the post-2004 Government actions bearing on flood risk on the River is mindboggling in light of the fact that Plaintiffs' experts testified at length about taking into consideration all factors or actions that would have contributed to cause the flooding in question in rendering their causation opinions. *See, e.g.*, **Tr. 4487:19-25, 5053:7-12, 8551:19-8552:5, 6326:23-6327:10;** *see also* **Pls.' Reply, ECF No. 434 at 31 n.10.**  Rather than belaboring this obvious point already found by the Court, Plaintiffs submit that in making the requisite but-for comparison of flooding to prove causation, their proof did, in fact, take into account the impacts of any and all factors or government actions contributing to cause the flooding in question, including the impacts of government actions after the MRRP was implemented in 2004.

**2.     Government's Erroneous Argument:**  *Plaintiffs cannot avoid their failure of proof on causation by making arguments unrelated to causation.*

Plaintiffs, in their prior *SBP* briefing, contend that the application of the all-acts causation standard to *Ideker* factual situations makes no sense because it cuts against the mandatory showing for proving their claims that they had a reasonable expectation that they would not experience the flooding in question – that the flooding in question was atypical or unexpected.  While the Government does not deny that such proof is necessary to establish Plaintiffs' claims, it wrongly contends that this showing has no bearing on assessing causation. While the Government readily accepts the net-benefits analysis of the all-acts standard of causation, it does not want to accept such an analysis' undeniable implication of the reasonable expectation of flooding factor in determining that causation, investment-backed or otherwise.  In fact, the Government goes so far as to contend that in raising this issue, Plaintiffs' theory of

causation is necessarily predicated on an impermissible tort theory that the Government owed a duty to provide a certain level of flood protection, which had been breached. The Government's argument is wrong on all counts.

In making the case for a net-benefits analysis of causation, the Federal Circuit in *SBP* cites favorably to *Sponenbarger* as holding that the "'far reaching benefits which respondent's land enjoys' . . . had to be considered [in determining causation. . .]" *SBP*, **887 F.3d at 1364** (*quoting* **United States v. Sponenbarger, 308 U.S. 256, 266-67 (1939)**). Similarly, citing *Hardwicke*, the Federal Circuit recognized that the court there had found that the plaintiff had failed to prove causation because despite the subsequent construction of the second dam, "the *expectation of flooding* was still far less than it would have been if there had been no flood control program at all." *SBP*, **887 F.3d at 1364** (*quoting Hardwicke*, **887 F.2d at 490-91**) (emphasis added). Not only does this recognize that the *expectation of flooding* is part of the net benefits analysis of the all-acts standard of causation, but it also explains the role of the contemplation predicate of the *Hardwicke* test for determining whether to apply the all-acts standard or *Hardwicke* standard. In other words, the reasonable expectation of flooding is a relevant factor in determining causation under both *SBP* and *Hardwicke*. Hence, the Federal Circuit, in expressly referencing a reasonable expectation of flooding as a factor in determining causation under the net benefits analysis of the all-acts standard, refutes the Government's argument that an expectation of flooding is not part of assessing causation.

The Government cannot have it both ways, it either stands behind the net benefits calculus of causation in *SBP* or it does not. Either way, the Government loses as to both parties' Motions for Reconsideration. Moreover, any fair reading of Plaintiffs' argument with respect to a reasonable expectation of flooding, investment-backed or otherwise, and Plaintiffs' theory and

proof of causation, make it crystal clear that they are not claiming a breach of a duty of the Government to provide a certain level of flood control, as argued by the Government. Plaintiffs' theory and proof of causation have always centered not on whether the Government breached a duty to keep Plaintiffs free from flooding, but on whether the Corps' paradigmatic change in its pre-MRRP River management policy led to increased flooding that would not otherwise occurred.

> **3.**     **Government's Erroneous Argument:** *Dismissing Plaintiffs' claims for failing to prove causation is consistent with the purpose of the Fifth Amendment.*

Plaintiffs contend in both their Reply, **ECF No. 434 at 33-34**, and their Response, **ECF No. 440 at 20-23**, that *SBP* cannot and should not be read as applying the all-acts standard of causation to cases like *Ideker* because that would mean that the Federal Circuit created an impermissible "bright-line defense" or "exclusionary rule" that, practically speaking, would automatically bar such cases. Plaintiffs contend that applying the all-acts standard to cases like *Ideker* would create, in effect, an exclusionary rule as to those cases because, practically speaking, no claim of a taking by flooding in such cases could ever be maintained under that standard. **Pltf.'s Resp., ECF No. 440 at 21-22**. In support of their contention, they argue that because **Ark. Game & Fish II** mandates that "[f]looding cases, *like other takings cases*, [are to] be assessed with reference to the 'particular circumstances of each case,' and not by resorting to blanket exclusionary rules," **SBP** must be interpreted and applied in such a way that does not create such a rule, i.e., it cannot be interpreted as extending the all-acts standard to *cases like Ideker*. **Id. at 20** (*quoting* **Ark. Game & Fish II, 568 U.S. at 37** (emphasis added) (citations omitted)).

In attempting to refute Plaintiffs' contention, the Government argues that just because "Plaintiffs' claims fail under the [all-acts] causation standard is not a flaw in the causation

standard; it is a flaw in Plaintiffs' claims." **U.S. Resp., ECF No. 441 at 10; U.S. Reply, ECF No. 442 at 14**. Of course, Plaintiffs do not contend that that the all-acts standard is universally "flawed," but that it cannot apply to cases like *Ideker* for the reasons given. The Government also argues that the plaintiffs' success in *Ark. Game & Fish* refutes Plaintiffs' contention that practically speaking, no claim of a taking by flooding like the *Ideker* claims involving the Missouri River could ever be successful. Both of the Government's arguments are directed at a mischaracterization of the reasoning actually asserted by Plaintiffs for why the application of the all-acts standard to *cases like Ideker* would act to create an impermissible exclusionary rule and are, therefore, irrelevant in deciding Plaintiffs' exclusionary-rule contention.

Plaintiffs *do not* contend that an exclusionary rule is created, in effect, by interpreting *SBP* as applying the all-acts standard to cases like *Ideker*, simply because Plaintiffs' claims would fail under that standard. Rather, using the net benefits analysis of the standard urged by the Government would mean that a plaintiff in a takings case *like Ideker*, involving (1) *flood risk-reducing government actions* completely transforming a river (construction of the System dams, the federal levees, and the BSNP), to provide flood control for generations to develop land located in or near the floodplain to entice people and businesses to locate and invest there and (2) *subsequent and non-contemplated flood risk-increasing actions* (the MRRP Changes) that caused both *permanent* and *temporary* injury, would be tasked, in order to show causation, with showing that any such injury would not have occurred *even without* those flood risk-reducing actions. Common sense and logic dictate that this would be an impossible burden *in all cases like Ideker*, especially in the case of claims for temporary injuries, such that the application of the standard of causation urged by the Government in *cases like Ideker* would, indeed, act as an impermissible exclusionary rule as to any and all such cases, even where the Government acts

intentionally to take land by flooding or otherwise. And, because ***Ark. Game & Fish*** is obviously **not** like an ***Ideker*** case factually in these key respects for why causation could never be established, the Government's championing it as refuting Plaintiffs' contention is beyond feeble; it just makes no sense and does nothing to refute their contention.

If the Government's one-size fits all standard for assessing causation, without exception, is accepted by the courts, it will not only act as a fundamental change to the bedrock of takings by flooding cases, but it will have the same effect on other types of takings cases. ***Ark. Game & Fish II*** mandates that takings by flooding cases be treated "like other takings cases" in their proof. **568 U.S. at 37.** Accordingly, whatever standard is adopted for ***Ideker*** cases, it will apply to all takings cases, not just takings by flooding cases. Hence, if the Government's one-size-fits-all standard, disregarding the particular circumstances of a takings case, is accepted that would mean that where a highway is constructed for the purpose of developing an undeveloped area consisting of cow pastures worth very little, which results in retail business properties worth millions, property owners would not be compensated for land subsequently and intentionally taken by the Government for non-contemplated highway expansion because the plaintiffs could never show that the taking, especially a temporary taking, exceeded the value of the benefits bestowed by the construction of the highway. Thus, the Government's reading of ***SBP*** and the reach of the all-acts standard would render absurd results in takings cases of every ilk, which are abhorred in the law, and, in effect, would impermissibly eviscerate the intent of the Takings Clause in such cases.

### B. Government's Contention: Plaintiffs' Case Depends, in Part, on the United States' Alleged Failure to Act.

For the first time, the Government alleges, without leave to amend its Motion for Reconsideration, that Plaintiffs' theory and proof of causation impermissibly relied, in part, on

the Government's failure to act, specifically, that the Corps failed to maintain the BSNP as part of Plaintiffs' alleged MRRP Changes. **U.S. Resp., ECF No. 441 at 11**. If not waived, this allegation was refuted by Plaintiffs in their Reply in support of their Motion for Reconsideration," **ECF No. 434 at 25-28**, which to avoid redundancy will not be repeated here.

## III.   Government's Arguments in Its "Reply in Support of Its Motion for Reconsideration"

All of the Government's arguments, but one, in its Reply in Support of its Motion for Reconsideration, **ECF No. 442**, are nothing more than a rehash of the arguments it made in its Response to Plaintiffs' Opening *SBP* Brief, **ECF No. 441** which Plaintiffs have already refuted above. For the sake of avoiding unnecessary redundancy, Plaintiffs will not repeat those retread arguments.

### A.   Government's Contention:   "The Proper Causation Standard Requires Consideration of All United States Actions That Address the Risk of Flooding on Plaintiffs' Property."

The Government makes this same contention in its Reply discussed above, **section I, ECF No. 441 at 2-10**, for dismissing all of Plaintiffs' claims for failing to apply the all-acts standard of causation with respect to the Government's flood risk-increasing actions in constructing the System dams, the federal levees, and the BSNP that preceded the MRRP Changes, which contention and supporting arguments Plaintiffs refute above. They will not repeat any of those arguments in this surreply to the Government's Motion for Reconsideration.

#### 1.   Government's Argument:   "Plaintiffs' reliance on *John B. Hardwicke* does not cure their failure to account for all the United States' flood risk-reducing actions."

This is the same argument raised by the Government in **section I.a, ECF No. 441 at 2-8**. Plaintiffs will not repeat their arguments refuting the same.

2.    **Government's Argument:  "The cases relied on in** *St. Bernard Parish* **demonstrate that the proper causation standard must account for all United States actions that address the relevant risk."**

This is the same argument raised by the Government in **section I.a, ECF No. 441 at 6-7**.

Plaintiffs will not repeat their arguments refuting the same.

3.    **Government's Argument:   "The reasonable investment-backed expectations of the Plaintiffs are not part of the causation analysis."**

This is the same argument raised by the Government in **section I.b, ECF No. 441 at 8-9**.

Plaintiffs will not repeat their arguments refuting the same.

4.    **Government's Argument:  "Plaintiffs' claim fails under** *John B. Hardwicke***."**

This is the same argument raised by the Government in **section I.a, ECF No. 441 at 7-8**.

Plaintiffs will not repeat their arguments refuting the same.

B.    **Government's Argument:   "The Proper Causation Standard Does Not Conflict with the** *Miller* **Doctrine, Or Any Other Precedent."**

The Government argues that any discussion of the *Miller* doctrine is irrelevant in determining the standard to apply in assessing causation in this case.  In so arguing, the Government not only misunderstands Plaintiffs' arguments in its prior *SBP* briefing with respect to that issue, but also overlooks the Federal Circuit's reference to that doctrine in citing to *Hardwicke* and its significance as the underlying basis for the *Hardwicke* approach.  Unlike in *SBP*, Plaintiffs here are only arguing the *Miller* Doctrine in the context of when and how that approach is to be carried out, as discussed at length in the prior *SBP* briefing and in **section II.A** above.  Accordingly, the Government's argument misses the mark.

C.    **Government's Argument:   "The Proper Causation Standard Is Not an Impermissible Exclusionary Rule."**

This is the same argument raised by the Government in **section I.c, ECF No. 441 at 9-10**.  Plaintiffs will not repeat their arguments refuting the same.

## IV.    CONCLUSION

For the foregoing reasons, the Court, based upon the particular facts and circumstances of this case, as found in its Trial Opinion, **ECF No. 426**, applied the correct standard for assessing causation in this case, the ***Hardwicke*** standard.  Specifically, the Court, in assessing causation, was correct in applying a but for analysis to determine what the flooding would have been but for the Government's MRRP Changes (System and BSNP Changes to implement the MRRP) starting in 2004.


**Date:**  July 6, 2018                              Respectfully submitted,

                                                      /s/ R. Dan Boulware_____
                                                      **R. Dan Boulware**
                                                      *Attorney of Record*
                                                      **Edwin H. Smith**
                                                      **Seth C. Wright**
                                                      **R. Todd Ehlert**
                                                      *Of Counsel*
                                                      Polsinelli PC
                                                      3101 Frederick Avenue
                                                      St. Joseph, MO 64506
                                                      Telephone: (816) 364-2117    Fax: (816) 279-3977
                                                      E-mail:        dboulware@polsinelli.com
                                                                     esmith@polsinelli.com
                                                                     scwright@polsinelli.com
                                                                     tehlert@polsinelli.com

                                                      **Benjamin D. Brown**, DC 495836
                                                      **Laura Alexander**, DC  988950
                                                      *Of Counsel*
                                                      Cohen Milstein Sellers & Toll PLLC
                                                      1100 New York Avenue, NW
                                                      Suite 500 W
                                                      Washington, D.C. 20005
                                                      Telephone: 202-408-4600      Fax: 202-408-4699
                                                      E-mail:        bbrown@cohenmilstein.com
                                                                     lalexander@cohenmilstein.com

                                                      **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I did on this 6th day of July, 2018, cause the above and foregoing to be sent via electronic transmission to:

**Terry M. Petrie**
**Carter F. Thurman**
**Edward C. Thomas**
United States Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370
Denver, CO  80202
Telephone:  303-844-1369     Fax:  303-844-1350
E-mail:Terry.Petrie@usdoj.gov
                Carter.Thurman@usdoj.gov
                Edward.Thomas@usdoj.gov

**ATTORNEYS FOR DEFENDANT**

                 /s/ R. Dan Boulware