## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **IDEKER FARMS, INC.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No.: 1:14-cv-00183-NBF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Senior Judge Nancy B. Firestone** |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' NOTICE IDENTIFYING THE DATES THEY CLAIM THE GOVERNMENT TOOK REAL AND PERSONAL PROPERTY INTERESTS ASSOCIATED WITH THE PHASE II REPRESENTATIVE TRACTS AND THE DATES FROM AND FOR WHICH THEY CLAIM THEY ARE DUE JUST COMPENSATION FOR THOSE TAKINGS WITH A MEMORANDUM IN SUPPORT OF THEIR NOTICE

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................................ 1

II.   Plaintiffs' Takings Claims and Claims for Just Compensation ............................... 2

    A.    Distinction Between Temporary and Permanent Flowage Easements ......................... 5

    B.    Plaintiffs' Claims as to Government's Taking of Real and Personal Property
        Interests and Just Compensation for Those Takings .................................................... 7

III.  Dates and Periods of Time of Physical Takings and Just Compensation ........................... 10

    A.    Dates and Periods of Time of Physical Takings ......................................................... 10

    B.    Dates and Periods of Time for When Just Compensation Accrues ............................ 14

IV.   Conclusion ................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pelagic Fishing Co. v. United States*,
   379 F.3d 1363 (Fed. Cir. 2004)................................................................8

*Ark. Game & Fish Comm'n v. United States II*,
   568 U.S. 23 (2012)..............................................................1, 4, 6, 8, 11, 14

*Ark. Game & Fish Comm'n v. United States III*,
   736 F.3d 1364 (Fed. Cir. 2013)..........................................................4, 6, 16

*Barnes v. United States*,
   538 F.2d 865 (Ct. Cl. 1976) ....................................................................6

*Bauman v. Ross*,
   167 U.S. 548 (1897)...............................................................................9

*Boston Sand & Gravel Co. v. United States*,
   278 U.S. 41 (1928)................................................................................16

*Brooks-Scanlon Corp. v. United States*,
   265 U.S. 106 (1924)..............................................................................16

*Eyherabide v. United States*,
   345 F.2d 565 (Ct. Cl. 1965) ..................................................................10

*First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*,
   482 U.S. 304 (1987)................................................................1, 11, 12, 15

*Fromme v. United States*,
   412 F.2d 1192 (Ct. Cl. 1969) ..................................................................4

*Huntleigh USA Corp. v. United States*,
   525 F.3d 1370 (Fed. Cir. 2008)...............................................................8

*Jacobs v. United States*,
   290 U.S. 13 (1933)..............................................................................8, 16

*Kimball Laundry Co. v. United States*,
   338 U.S. 1 (1949)........................................................................9, 10, 16

*Nollan v. Cal. Coastal Comm'n*,
   483 U.S. 825 (1987)................................................................................6

*Otay Mesa Prop., L.P. v. United States*,
    670 F.3d 1358 (Fed. Cir. 2012)........................................................................5

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978)........................................................................................3

*Rasmuson v. United States*,
    807 F.3d 1343 (Fed. Cir. 2015)........................................................................7

*Ridge Line, Inc. v. United States*,
    346 F.3d 1346 (Fed. Cir. 2003).......................................................3, 6, 8, 9, 15

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984)......................................................................................7, 8

*San Diego Gas & Elec. Co. v. City of San Diego*,
    450 U.S. 621 (1981)......................................................................................15

*Seaboard Air Line Ry. Co. v. United States*,
    261 U.S. 299 (1923)......................................................................................16

*Skip Kirchdorfer, Inc. v. United States*,
    6 F.3d 1573 (Fed. Cir. 1993)............................................................................5

*United States v. 564.54 Acres of Land*,
    441 U.S. 506 (1979)...............................................................................9, 15, 16

*United States v. Causby*,
    328 U.S. 256 (1946)........................................................................................5

*United States v. Cress*,
    243 U.S. 316 (1917)......................................................................................4, 6

*United States v. Dickinson*,
    331 U.S. 745 (1947)...............................................................................1, 8, 9, 11

*United States v. Gen. Motors Corp.*,
    323 U.S. 373 (1945)......................................................................................10

*United States v. Klamath & Moadoc Tribes*,
    304 U.S. 119 (1938)......................................................................................16

*United States v. Miller*,
    317 U.S. 369 (1943)...................................................................................15, 16

*United States v. Pewee Coal Co.*,
    341 U.S. 114 (1951)......................................................................................10

*United States v. Va. Elec. & Power Co.*,
    365 U.S. 624 (1961)..............................................................................................................7

*United States v. Westinghouse Elec. & Mfg. Co.*,
    339 U.S. 261 (1950)............................................................................................................10

**Statutes**

Uniform Relocation Assistance and Real Property Acquisition Policies Act of
    1970, § 304(c), 42 U.S.C.A. § 4654(c) ................................................................................17

The Court, in its "Final Discovery Schedule and Preliminary Pre-Trial Order" ("Scheduling Order"), **ECF No. 509**, ordered the Phase II Plaintiffs ("Plaintiffs") to file a notice identifying the dates they claim the Government took real and personal property interests associated with the Phase II Representative tracts ("Phase II tracts"), and the dates from and for which they claim they are due just compensation for those takings ("Discovery Notice") with a memorandum in support thereof ("Supporting Memorandum").   Pursuant to the Court's Scheduling Order, Plaintiffs, by and through their counsel of record, file the following as their Discovery Notice and Supporting Memorandum.

## I.     Introduction

In order "to help limit discovery," the Court has ordered Plaintiffs to identify the dates they claim the Government took, by its MRRP System and BSNP Changes ("MRRP Changes"), real and personal property interests associated with the three (3) Phase II tracts and the dates from and for which they claim they are due just compensation for those takings.  **Scheduling Order at 1.**  Because physical takings due to a Government project causing increased flooding, in this case the MRRP, do not occur on a single date, but over the lifetime of that project, the dates of the takings in this case do *not* refer to single dates, but to various time periods during which the takings were effective.  ***United States v. Dickinson*, 331 U.S. 745, 748-49 (1947).** Likewise, the dates from and for which just compensation is claimed for those takings do *not* refer to single dates, but refer to the various time periods during which the takings were effective.  *See **Ark. Game & Fish Comm'n v. United States II*, 568** U.S. 23, 33 **(2012)** (holding that "[o]nce the government's actions have worked a taking of property, no subsequent action by the government can relieve it of the duty to provide compensation *for the period during which the taking was effective*" (emphasis added) (*quoting **First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 321 (1987))).** As discussed below,

under the legal standards for establishing Fifth Amendment physical takings by government-induced flooding and the just compensation to be paid for such takings, the time periods for the alleged Phase II takings and for which Plaintiffs are claiming just compensation are the periods of time during which the MRRP flooding interfered with Plaintiffs' use and enjoyment of the Phase II tracts causing injuries and losses to their real and personal property interests in those tracts.

## II.     Plaintiffs' Takings Claims and Claims for Just Compensation

Plaintiffs claim that as a direct result of the United States Army Corps of Engineers' ("Corps") MRRP Changes in managing the Missouri River ("River"), the Government physically took, by inverse condemnation, various real and personal property interests ("Phase II property interests") of theirs that are associated with the three (3) Phase II tracts.  Plaintiffs claim and the Court has already found in its Phase I rulings that the MRRP Changes caused predictable increased flooding of the Phase II tracts that would not have occurred but-for those Changes, which caused injuries and losses that seriously interfered with Plaintiffs' use and enjoyment of their Phase II real and personal property interests.  Plaintiffs contend that those interests are protected under the Fifth Amendment, entitling them to just compensation from the Government for the periods of time during which those takings were effective.

The Court, in its Phase I rulings, has already found for Plaintiffs on all three requisite liability elements of their Phase II claims: (1) actual causation; (2) proximate causation (foreseeability); and (3) appropriation.  As to the proof element of **actual causation**, the Court found that the flooding in question would not have occurred but-for the MRRP Changes.  As to the proof element of **proximate causation or foreseeability**, the Court found that the flooding in question was foreseeable given the Corps' authorization and implementation of the MRRP Changes.  And, as to the proof element of **appropriation**, the Court found that Plaintiffs have

satisfied the severity-of-interference test for establishing an appropriation in that the MRRP-induced flooding seriously interfered with Plaintiffs' use and enjoyment of their real and personal property interests in the Phase II tracts.[1]  As to the element of appropriation, the Court has reserved the issue of whether the reasonable investment-backed expectation of flooding ("RIBEF") factor favors a finding of an appropriation.  Plaintiffs submit that given the definition of the element of a government-induced appropriation by flooding that: "to constitute a taking, an invasion must *appropriate* a benefit to the government at the expense of the property owner, or at least preempt the owners [sic] right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value[,]" ***Ridge Line, Inc. v. United States***, **346 F.3d 1346, 1356 (Fed. Cir. 2003)** (emphasis added), the Court was correct in ruling in Phase I that the balance of the relevant factors considered satisfied the severity-of-interference test necessary to find an appropriation.  Moreover, they submit that given the Phase I evidence and the evidence that will be introduced in Phase II, the RIBEF factor, when considered along with the other relevant appropriation factors, clearly favors such a finding.  Accordingly, as a practical matter, the primary issues for Phase II are the just compensation issues associated with the Phase II tracts.

As to the Phase II just compensation issues, Plaintiffs claim that the Government's MRRP Changes imposed *permanent* flowage easements over the Phase II tracts that constitute

---

[1]In determining whether Plaintiffs have established the required *element* of appropriation, the Court must consider all relevant factors in the context of the individual facts and circumstances of this case, which would include the RIBEF factor.  However, in making that determination, it must be remembered that *factors*, unlike *elements*, are *not* part of a plaintiff's burden for proving a takings claim; rather, they are simply "relevant considerations" in proving the elements of those claims.  ***Penn Cent. Transp. Co. v. City of New York***, **438 U.S. 104, 124 (1978).**  Thus, the question associated with a takings *factor*, such as the RIBEF factor, as opposed to a takings *element*, is whether the taking is "more readily [] found" given the analysis of the factor in question.  ***Id.***  Regardless, Plaintiffs plan to introduce ample evidence at trial to demonstrate that the RIBEF factor favors a finding of appropriation in this case.

compensable takings because: (1) the MRRP altered the flooding patterns of the River that existed before the authorization and implementation of the MRRP that commenced in 2004; (2) the MRRP-altered flooding patterns intermittently subjected the Phase II tracts to temporary flooding between 2007 and 2014 that was unexpected under the pre-MRRP flooding patterns; (3) the MRRP is an ongoing project that is intended to be permanent such that the MRRP-altered flooding patterns will continue beyond 2014; and (4) the continuing MRRP-altered flooding patterns will subject the Phase II tracts to the same intermittent and recurring flooding that occurred between 2007 and 2014.  *See **Ark. Game & Fish Comm'n v. United States III**, 736 F.3d 1364, 1372 (Fed. Cir. 2013); **United States v. Cress**, 243 U.S. 316, 329 (1917); **Fromme v. United States**, 412 F.2d 1192, 1196 (Ct. Cl. 1969)* (discussing what must be shown to establish a permanent flowage easement)**.**

Should the Court find that permanent flowage easements were not imposed on the Phase II tracts by the MRRP Changes as claimed, Plaintiffs claim, in the alternative, that the MRRP Changes took Plaintiffs' real and personal property interests in the Phase II tracts either: (1) by the imposition of *temporary* flowage easements over the Phase II tracts; or (2) by individual temporary flooding events.  Temporary flowage easements, as well as individual temporary floods, can constitute physical takings where the flooding in question was government-induced, was foreseeable, and seriously interfered with the property owner's use and enjoyment of his property.  **Ark. Game & Fish II**, 568 U.S. at 34 (holding that "[b]ecause government-induced flooding can constitute a taking of property, and because a taking need not be permanent to be compensable, our precedent indicates that government-induced flooding of limited duration may be compensable").  Of course, this Court has already ruled in its Phase I rulings that the flooding events of 2007 through 2014 concerning the Phase II tracts would not have occurred but for the

MRRP Changes, that they were foreseeable given the MRRP Changes, and that they seriously interfered with Plaintiffs' use and enjoyment of their Phase II real and personal property interests in question.  Hence, the primary Phase II just compensation issue to be resolved is whether the taking of those interests are based upon: (1) the imposition of MRRP permanent flowage easements over the Phase II tracts; (2) the imposition of MRRP temporary flowage easements over the Phase II tracts; or (3) the individual MRRP-induced flooding events of the Phase II tracts.

### A.      Distinction Between Temporary and Permanent Flowage Easements

Although briefed previously by Plaintiffs, before addressing the dates and periods of time of the takings claimed and the dates and periods of time during which just compensation accrued, for the purposes of Plaintiffs' Discovery Notice, it is important to reiterate the legal distinction between a temporary and a permanent flowage easement and when such a distinction is relevant in determining the Phase II issues.  Importantly, this distinction is *not relevant* in determining the *liability* issues of a physical taking by government-induced flooding.  **Otay Mesa Prop., L.P. v. United States, 670 F.3d 1358, 1363 (Fed. Cir. 2012); Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1583 (Fed. Cir. 1993);** *see also* **United States v. Causby, 328 U.S. 256, 267-68 (1946)** (after having first determined that there had been an appropriation of a flowage easement, without distinguishing whether it was temporary or permanent, the Supreme Court remanded the case to make that determination for the sole purpose of determining the amount of just compensation to award).  Rather, it is *only relevant* in calculating <u>*just compensation*</u> after the trial court has already found, *as a matter of liability*, that a flowage easement was imposed on the land in question due to government-induced flooding.  **Causby, 328 U.S. at 267-68; Otay Mesa Prop., 670 F.3d at 1363; Skip Kirchdorfer, 6 F.3d at 1583.**  To establish a flowage easement has been taken, a property owner has to show that the Government has by its flood-*increasing*

actions taken a continuous right to intermittently subject the property in question to inevitably recurring flooding. *Cress*, **243 U.S. at 328;** *Ark. Game & Fish II*, **568 U.S. at 27.** For purposes of determining *liability*, this test of a flowage easement applies equally to temporary and permanent flowage easements.

For purposes of distinguishing between temporary and permanent flowage easements, the issue is not one of the duration of the inundation. Hence, a permanent flowage easement is not predicated on a permanent inundation, and a temporary flowage easement is not predicted on a temporary inundation. *Ridge Line*, **346 F.3d at 1352.** Rather, they are predicated on whether the interference with a property owner's use and enjoyment of his property is temporary or permanent. An easement for constitutional purposes is "where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises." *Id.* (*quoting* ***Nollan v. Cal. Coastal Comm'n***, **483 U.S. 825, 831-32 (1987)**). Thus, the test for distinguishing between a temporary and permanent flowage easement *to calculate just compensation* is simply a function of whether the government actions that caused the imposition of the flowage easement are ongoing such that the property in question will continue to be subjected post-trial to the same intermittent flooding. *Ark. Game & Fish III*, **736 F.3d at 1369.** If those actions are ongoing so as to continue to subject the land in question to the same intermittent flooding *post-trial*, then the flowage easement *already found* as part of determining liability, is a *permanent* flowage easement for purposes of calculating just compensation.[2] *Id.*

---

[2]There seems to be some confusion that a flowage easement is "temporary" simply because it is the product of land being subjected to "temporary" flooding. That is *not* the case. A flowage easement is neither temporary nor permanent due to the temporary or permanent nature of the underlying flooding. Rather, *both* temporary and permanent flowage easements are based upon temporary flooding that occurs intermittently. *See* *Cress*, **343 U.S. at 329;** ***Barnes v. United***

However, if it is determined that the government actions are *not* ongoing *or* that even if ongoing, the land will *not* continue to be subjected to the same intermittent flooding post-trial due to the flowage easement *already found*, then that would be a *temporary* flowage easement.

The distinction between a temporary and permanent flowage easement is important in calculating just compensation because if a flowage easement is found to have been appropriated, as part of the trial court's liability determinations, and it is determined to be a *permanent* flowage easement in calculating just compensation, a real property owner in fee is entitled to additional just compensation for any diminution in the fair market value ("FMV") of his property caused by the permanent easement. The diminution in the FMV of real property due to the imposition of a permanent flowage easement is calculated as the difference between the FMVs of the real property *with* and *without* the permanent flowage easements. ***Rasmuson v. United States*, 807 F.3d 1343, 1345 (Fed. Cir. 2015); *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 632 (1961).**

> **B.      Plaintiffs' Claims as to Government's Taking of Real and Personal Property Interests and Just Compensation for Those Takings**

Generally, Plaintiffs are claiming that the Government violated the Fifth Amendment by physically taking their property due to MRRP-induced flooding without paying them just compensation. The term "property" for purposes of Fifth Amendment analysis, with respect to liability or just compensation, refers to the rights inhering in the person's relationship to the property in question, not the property or "thing" itself. ***Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984).** Thus, a physical taking is not a taking of the property *per se*, but rather the

---

***States*, 538 F.2d 865, 872 (Ct. Cl. 1976)** (a flowage easement is imposed where the land is subjected intermittently to inevitably recurring flooding). Thus, the distinction between a temporary and permanent flowage easement is <u>not</u> the nature of the underlying flooding but whether the government actions that caused such flooding have ceased or are ongoing such that the land in question will be subjected intermittently to inevitably recurring flooding.

plaintiff's interest in that property.  The Takings Clause protects both real and personal property interests.  ***Id.***; ***Huntleigh USA Corp. v. United States***, **525 F.3d 1370, 1377-78 (Fed. Cir. 2008);** ***Am. Pelagic Fishing Co. v. United States***, **379 F.3d 1363, 1371 (Fed. Cir. 2004).**  Accordingly, Plaintiffs in this case are claiming just compensation for the Government's taking by MRRP-induced flooding their real and personal property interests in or associated with the Phase II tracts.

Where the Government physically takes an interest in property for some public purpose, it has a categorical duty to pay just compensation to the property owner.  ***Ark. Game & Fish II***, **568 U.S. at 31.**  Under the Fifth Amendment, the Government must compensate a property owner for all it takes, not just the taking of land.  ***Dickinson***, **331 U.S. at 750.**  Hence, where the Government takes real and personal property interests by government-induced flooding, regardless of its duration, including flooding from the imposition of a flowage easement over a tract of land, it must pay the property owner just compensation for the taking of those interests.  ***Ark. Game & Fish II***, **568 U.S. at 31;** ***Ridge Line.***, **346 F.3d at 1346.**  The Government must compensate a property owner for all that it "inevitably washes away as a result of [the government-induced] flooding."  ***Dickinson***, **331 U.S. at 750.**  The Fifth Amendment guarantees just compensation that is comprehensive and encompasses "all elements" of compensation including compound interest from the time of taking.  ***Jacobs v. United States***, **290 U.S. 13, 16-17 (1933).**  Thus, a property owner must be compensated for the taking of any real and personal property interests that are associated with a tract of land that was inundated by government-induced flooding, whether a taking from a qualifying single temporary flood or from a qualifying series of temporary floods constituting the imposition of a flowage easement.

By definition, the taking of the Phase II interests claimed by Plaintiffs in this case would consist of all the injuries and losses to the real and personal property interests associated with the Phase II tracts that were caused by MRRP-induced flooding.  As permitted by law, those injuries and losses would include the diminution in the FMVs of the Phase II tracts due to the imposition of MRRP *permanen*t flowage easements.  ***Dickinson*, 331 U.S. at 751**.  As discussed above, such a diminution in the FMVs of the Phase II tracts, if any, is measured by the difference between the FMVs of the Phase II tracts *with* and *without* the permanent flowage easements.  Those FMVs are a function of what a willing buyer would pay a willing seller in cash for the whole tract, even though only a portion of the tract was being inundated, *with* and *without* the increase in the frequency, severity, and duration of flooding caused by the imposition of the easements.  ***United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979)** (holding that FMV is what a willing buyer would pay a willing seller in cash for property).  "When the part [of the property] not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account."  ***Dickinson*, 331 U.S. at 750** (*quoting **Bauman v. Ross*, 167 U.S. 548, 574 (1897)**).

In addition to being paid just compensation for the value of the permanent flowage easements taken over the Phase II tracts, Plaintiffs would also be entitled to recover for the cost of any prudent flood prevention measures to prevent the MRRP flooding of the Phase II tracts, as well as for the cost of reclaiming any land that was inundated by that flooding.  ***Id.* at 751; *Ridge Line*, 346 F.3d at 1353.**  In addition, where appropriate, Plaintiffs can claim just compensation for the rental value of the Phase II tracts for periods of MRRP-flood inundation, the damage to any fixtures or improvements on the tracts, and the diminution in the FMV of any business resulting from that flooding.  ***Kimball Laundry Co. v. United States*, 338 U.S. 1, 16 (1949);**

9

*United States v. Gen. Motors Corp.*, **323 U.S. 373, 383-84 (1945).**   When the Government commits a temporary or permanent taking that results in the destruction of improvements on the land, the Government must pay just compensation for any and all damages to those improvements.   *Kimball Laundry*, **338 U.S. at 7.**   "This standard . . . allows not only compensation for the use and occupancy of the property but also for the loss of improvements and the cost of placing the property in its pre-taking condition (if it has diminished in value)." *Eyherabide v. United States*, **345 F.2d 565, 570 (Ct. Cl. 1965)** (*citing cf. **United States v. Gen. Motors Corp.**, 323 U.S. at 381-384; **Kimball Laundry**, 338 U.S. at 7, 14-16; **United States v. Westinghouse Elec. & Mfg. Co.**, 339 U.S. 261, 264-65, 267-68 (1950); **United States v. Pewee Coal Co.**, 341 U.S. 114 (1951)*).

Having identified Plaintiffs' claims as to the Government's taking of the real and personal property interests associated with the Phase II tracts and the just compensation due them for those takings, Plaintiffs will first address the legal standards governing the applicable dates or periods of time for the alleged takings and the dates or periods of time during which just compensation accrued as to those takings.  Applying those standards, Plaintiffs will then identify those applicable dates or periods of time as they relate to their Phase II claims *for the sole purpose of limiting the scope of discovery in this case*.

**III.   Dates and Periods of Time of Physical Takings and Just Compensation**

   **A.   Dates and Periods of Time of Physical Takings**

   Plaintiffs submit that applying the correct legal standard, the applicable *dates or periods of time* of the takings alleged are the dates or periods of time when the Corps' MRRP Changes actually caused serious interference with the Plaintiffs' use and enjoyment of the real and personal property interests associated with the Phase II tracts.  By definition, that would be the dates or periods of time where the MRRP-induced flooding actually caused the injuries and

losses for which Plaintiffs seek just compensation and not when the Court determines whether they are compensable takings as alleged. *First English*, **482 U.S. at 305.**

Under *Arkansas Game & Fish II*, floods of limited duration, as well as permanent floods, can constitute Fifth Amendment physical takings. **568 U.S. at 34.**[3]  With respect to such takings, "[p]roperty is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time." *Dickinson*, **331 U.S. at 748.**  Thus, a taking occurs when the government-induced flooding in question actually interferes with the property owner's use and enjoyment of the property interest in question.  Accordingly, in this case, the dates or periods of time of the takings claimed would be the dates or periods of time during which the MRRP-induced flooding caused the injuries and losses claimed by Plaintiffs to their Phase II real and personal property interests and for which they seek just compensation.

In its Phase I rulings, the Court determined the dates and periods of time of the floods that were caused by the MRRP Changes as to each of the Phase II tracts.  Necessarily, the dates or periods of time of the claimed takings by government-induced flooding are a function of those dates and periods of time, the question being when did the MRRP floods actually interfere with Plaintiffs' use and enjoyment of their Phase II real and personal property interests to constitute compensable takings.  Under that standard, generally, the dates of when the floods began and when the takings began are the same, understanding that the *first date* of a taking is not the *only date* of the taking since a taking by MRRP flooding under Plaintiffs' theory of recovery was

---

[3]In fact, in interpreting *Arkansas Game & Fish II*, this Court correctly ruled prior to Phase I that a one-flood defense is not legally viable to defeat Plaintiffs' claims.  *See* **Am. Prelim. Pre-Trial Order**, **Oct. 4, 2016, ECF No. 146**.  Rather, physical takings by flooding claims are now to be treated like any other takings claims and are to be "assessed with reference to the particular circumstances of each case . . . ."  *Ark. Game & Fish II*, **568 U.S. at 37** (citation and internal quotation marks omitted).

ongoing. Hence, in referencing a "date of the taking" by its interference with the use and enjoyment of a Phase II property interest, it must be understood that such a date is merely the *first* date of the MRRP flooding interfering with Plaintiffs' use and enjoyment of their Phase II real and personal property interests, not the only date. It goes without saying that physical takings due to Government projects for a public purpose generally occur over a period of time. For example, the first day of the first MRRP flood is not the only date of the taking of a flowage easement, but simply the first or beginning date of an ongoing process of a taking of such an easement that takes a period of time and, as explained below, compensation is owing or begins to accrue from the first day that losses or damages are incurred as to those Government actions.

As to the dates or periods of time of the takings associated with the Phase II tracts, the Court found and concluded in its Phase I rulings:

### Tract 17 – Adkins

The Court found that there was MRRP-induced flooding of Tract 17 in 2007, 2008, and 2010 that "*interfered with plaintiffs' use and enjoyment of their property* and was caused by and was the foreseeable result of the Corps' System and [BSNP] Changes." **Trial Op. at 177, Mar. 13, 2018, ECF No. 426** (emphasis added)**.** The Court found that the 2007 MRRP flooding occurred "in April and May during the planting seasons." *Id.* **at 173.** As to the 400 of the 1,044 acres of the tract that Plaintiffs claimed were flooded, the Court found that crops were lost. The Court found that the 2008 MRRP flooding was similar to the 2007 MRRP flooding in severity, duration, and damage," but occurred later in the year, in June, causing crop loss. *Id.* **at 174.** The Court found that the 2010 MRRP flooding was similar to the MRRP flooding in 2007 and 2008, "but the water was higher and stayed longer," with flooding occurring in late June, causing crop loss. *Id.* **at 175.**

**Tract 33 – Ideker Tract**

The Court found that there was MRRP-induced flooding of Tract 33 in 2007, 2008, 2010, 2013, and 2014 that "*interfered with plaintiffs' use and enjoyment of their property* and was caused by and was the foreseeable result of the Corps' System and [BSNP] Changes." *Id.* **at 224** (emphasis added)**.** The Court found that the 2007 MRRP flooding occurred in May, lasting 30 to 60 days, causing grain bins and irrigation equipment to be damaged or destroyed, and damage to the River cabin requiring extensive renovation. *Id.* **at 219.** Prior to the flooding, there were "[e]xtensive sandbagging operations." *Id.* The Court found that the MRRP 2008 flooding began in mid-June and lasted 30 to 45 days causing grain bins, irrigation equipment, and crops to be damaged or destroyed, and damage to the River cabin requiring renovation. *Id.* **at 220.** Prior to the flooding, there were "[e]xtensive sandbagging operations." *Id.* The Court found that the MRRP 2010 flooding lasted 90 days, causing extensive damage to the farm, home, structures, and equipment, destroying the farmhouse, requiring it to be rebuilt, and heavily damaging the River cabin, requiring it to be renovated. *Id.* **at 221.** Plaintiffs claim that this flooding started on June 19. **Dr. Hromadka's Report, Appx. E, Tr. PX 2005.** The Court found that the MRRP 2013 flooding began in May and lasted 30-45 days, flooding the 55 acres on the Riverward side of the Ideker mainline levee. **ECF No. 426 at 223.** Although not addressed by the Court in its Phase I rulings, Ideker claims that as a result of the 2013 MRRP flooding, crops were lost and the farming operation was interfered with as was the use and enjoyment of the River cabin. The Court found that the MRRP 2014 flooding, affecting the 55 acres on the Riverward side of the Ideker mainline levee, was much like the MRRP 2013 flooding such that it was no longer farmable. *Id.* **at 224.**

13

### Tract 41 – Buffalo Hollow

The Court found that there was MRRP-induced flooding of Tract 41 in 2007, 2008, 2010, 2013, and 2014 that "*interfered with plaintiffs' use and enjoyment of their property* and was caused by and was the foreseeable result of the Corps' System and [BSNP] Changes." *Id.* **at 247-48** (emphasis added)**.** The Court found that the 2007 MRRP flooding occurred May 7 to May 15 and again from May 24 May 25, causing crop loss and reduced yields, and pumping expenses. *Id.* **at 244.** The Court found that the MRRP 2008 flooding occurred from May 30 to June 21 causing crop loss and reduced yields, and pumping expenses. *Id.* **at 245.** The Court found that the MRRP 2010 flooding occurred from June 11 to August 20 causing crop loss and reduced yields, pumping expenses, and reclamation expenses. *Id.* The Court found that the MRRP 2013 flooding occurred from late May to early June causing crop loss. *Id.* **at 246.** The Court found that the MRRP 2014 flooding was similar to the 2013 flooding. *Id.* **at 247.**

The foregoing rulings of the Court set forth the general time frames for the ongoing takings caused by the MRRP flooding of the Phase II tracts. They demonstrate that the MRRP flooding as to all three (3) Phase II tracts began in 2007 and continued causing ongoing interference with the Plaintiffs' use and enjoyment of their Phase II property interests both during and after the floodwaters had receded. These periods of time would constitute the dates or periods of time of the takings claimed by Plaintiffs in Phase II.

### B. Dates and Periods of Time for When Just Compensation Accrues

The Fifth Amendment requires that where the Government physically takes either a real or personal property interest by inverse condemnation, it must pay just compensation to the owner for the taking of that interest. *Ark. Game & Fish II*, **568 U.S. at 34.** A property owner is not justly compensated until the Government pays him an amount sufficient to put him in "as good position pecuniarily as he would have occupied if his property had not been taken."

*United States v. Miller*, **317 U.S. 369, 373 (1943).**   A property owner is entitled to just compensation for all injuries and losses attributable to the taking, past, present and prospective, and not just for "the time of the alleged taking."   *Ridge Line*, **346 F.3d at 1359.**   As noted above, most, if not all, of the physical takings by government-induced flooding alleged in this case occurred over a period of time and not just on certain dates.

Just compensation is based upon the value of the property interest *during the time it was taken*.   *564.54 Acres of Land*, **441 U.S. at 511.**

> As soon as private property *has been taken* . . . the [property] owner has *already* suffered a constitutional violation, and the self-executing character of the constitutional provision with respect to compensation, . . . is triggered.   This Court has consistently recognized that the just compensation requirement in the Fifth Amendment is not precatory: once there is a taking, compensation *must* be awarded.

*San Diego Gas & Elec. Co. v. City of San Diego*, **450 U.S. 621, 654 (1981)** (emphasis added) (citation and internal quotation marks omitted)**.**   Hence, just compensation is determined from the "time of the taking," *not* when the Government's actions are found by the court to constitute a taking of the owner's property entitling him to just compensation.   *First English*, **482 U.S. at 305.**   As such, the date from which just compensation begins to accrue for a taking is the date when the government-caused interference commences and continues to accrue during the time period of that interference.

The measure of just compensation of a property interest taken is determined by reference to an objective standard of its FMV.   *564.54 Acres of Land*, **441 U.S. at 511.**   Under this standard, the property owner is entitled to receive as just compensation the difference between what a hypothetical willing buyer would pay to a willing seller for the property in its actual condition, with or given the government-induced flooding, compared to what such a buyer would pay for the property in what its hypothetical condition would have been without or but for the

injury or loss caused by the government-induced flooding.  ***Id.***   However, a property owner is not strictly or solely limited to the FMV of the lost property interest in question, but is entitled to such additional compensation as will make him whole.  ***Seaboard Air Line Ry. Co. v. United States,*** **261 U.S. 299, 304 (1923)**; ***Boston Sand & Gravel Co. v. United States***, **278 U.S. 41, 52 (1928)**; ***Brooks-Scanlon Corp. v. United States***, **265 U.S. 106, 123 (1924)**; ***United States v. Klamath & Moadoc Tribes***, **304 U.S. 119, 123 (1938)** ("The established rule is that the taking of property by the United States in the exertion of its power of eminent domain implies a promise to pay just compensation, *i.e.*, value at the time of the taking *plus* an amount sufficient to produce the full equivalent of that value paid contempor[a]neously with the taking." (emphasis added))**.**

Based upon the foregoing standards and the applicable law for determining just compensation for takings, including the applicable time periods, Plaintiffs are claiming just compensation for all the injuries and losses caused to their real and personal property interests in the Phase II tracts that are compensable under the Fifth Amendment, as set forth above.  They claim "all elements" of cognizable compensation, including compound interest.  ***Jacobs***, **290 U.S. at 16-17.**  They are seeking just compensation for those injuries and losses that will put them in "as good position pecuniarily as [they] would have occupied if [their real and personal property interests in the Phase II tracts] had not been taken."[4]  ***Miller***, **317 U.S. at 373.**

The injuries and losses for which Plaintiffs are claiming just compensation include permanent losses of real property interests in fee, *e.g.*, acreage that cannot be reclaimed due to

---

[4]To establish entitlement to the amount of just compensation requested, a property owner has the burden of proving such entitlement to a degree of "reasonable certainty" that will allow the court to make a "fair and reasonable approximation" of the just compensation that should be paid.  ***Ark. Game & Fish III***, **736 F.3d at 1379.**   This standard requires more than a mere guess or speculation, but it does not require proof with "absolute exactness or mathematical precision.  ***Id.*** While the "value compensable under the Fifth Amendment . . . can be determined only by a guess," it has to be "as well informed as possible."  ***Kimball Laundry***, **338 U.S. at 5-6.**

the inundation of sand and debris, and to personal property interests, *e.g*., destruction of equipment, requiring just compensation for the FMVs of those interests at the time they became permanent losses.  Plaintiffs are also claiming just compensation for permanent crop losses, which under the applicable law discussed above can be claimed separately from the diminution in the FMV of a real property interest for the imposition of a permanent flowage easement.  Crop losses are calculated as the FMV of the lost bushel of the crop in question at the time of the loss. Plaintiffs are also claiming just compensation for repairing damages to Phase II real and personal property interests, where the reasonable cost of repairs is less than the FMV of the interest in question at the time it was damaged, *e.g.,* damage to structures or equipment associated with the Phase II tracts.  Plaintiffs are also claiming just compensation for the reasonable costs of any prudent measures to prevent injury or loss from the MRRP-induced flooding and the reasonable cost of reclaiming any injured real or personal property interests, with just compensation to be determined at the time of such flood-prevention measures or repairs.  As to the imposition of permanent flowage easements over the Phase II tracts, Plaintiffs are claiming just compensation for the value of those easements to be determined as of December 31, 2014, the Court's cutoff date for establishing just compensation for MRRP injuries and losses, which would, by definition, include the diminution in FMVs of the Phase II tracts caused by flooding up to that date.  In addition, Plaintiffs would be entitled to compound interest on any just compensation awarded at a rate based upon the Prudent Investor Rule, from the time that the Court determines just compensation should have been paid, which is the same time when the actual compensated loss or injury in question occurred.[5]

---

[5]Pursuant to the **Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, § 304(c), 42 U.S.C.A. § 4654(c)**, Plaintiffs will seek an award for reasonable attorneys' fees and expenses for any final award to a Plaintiff for just compensation.

**IV.     Conclusion**

As discussed above, the Court, as to the three (3) Phase II tracts, has already found that Plaintiffs have satisfied their burdens of proof as to all three *liability* elements of their claims of takings by government-induced flooding: (1) actual causation; (2) proximate causation (foreseeability); and (3) appropriation.  In Phase II, the only liability issue technically remaining for the Court to consider is the RIBEF appropriation factor, when balanced with all the other relevant appropriation factors implicated in this case.[6]  As stated above, Plaintiffs submit that such factors, including the RIBEF factor, on balance, clearly satisfy the severity-of-interference test for establishing the element of appropriation.  Accordingly, Phase II, practically speaking, is nothing but a phase for determining just compensation.

As to the Phase II just *compensation* issues, what are the injuries and losses claimed by Plaintiffs that are compensable and the amount of just compensation for each, the Court first has to determine whether the flooding, when viewed as a whole, constitutes the imposition of permanent flowage easements over the Phase II tracts.  This determination is necessary in determining the Phase II just compensation issues because, while the Court has already determined in its Phase I rulings that the individual Phase II MRRP-induced floods, starting in 2007, constitute compensable takings, if they do constitute the imposition of permanent flowage easements, Plaintiffs would be entitled to additional just compensation for the diminution in the FMVs of the Phase II tracts.  Regardless of which way the Court finds as to issue of whether permanent flowage easements were imposed on the Phase II tracts, it does not have any bearing

---

[6]It is yet to be determined by the Court whether the ***Sponenbarger*** analysis, as an affirmative defense, will be a Phase II liability issue in determining the element of appropriation.  However, as previously briefed by Plaintiffs, if it is, it clearly favors Plaintiffs' claims in that the Government will never be able to satisfy its burden of demonstrating that the injuries and losses caused by the MRRP flooding to Plaintiffs' Phase II real and personal property interests is "slight."

upon whether the other injuries and losses claimed by Plaintiffs are compensable or how the amounts of just compensation for each are calculated.  Those compensation issues would be determined in the same manner whether the Court finds the takings claimed were due to the imposition of permanent or temporary flowage easements, or due to individual Phase II MRRP-induced floods, starting in 2007.

In closing, it should be noted that the issue of determining the Phase II just compensation issues, like in all trials involving a determination of damages, is an evolving issue at trial, depending on how the evidence comes in.  Regardless, for the limited issue of Plaintiffs' Discovery Notice, as to both the limited Phase II liability-appropriation issue of the RIBEF factor and the just compensation issues, discussed above, the foregoing Discovery Notice and Supporting Memorandum are more than enough to give notice to the Government that will allow it to adequately prepare to address those issues at trial.  Moreover, the fact is that Plaintiffs have already given the Government in discovery all of the information in their possession that addresses those Phase II issues.

Respectfully filed on **November 5, 2019**.

  /s/ *R. Dan Boulware*
R. Dan Boulware
        *Attorney of Record*
Edwin H. Smith
Seth C. Wright
Polsinelli PC
3101 Frederick Avenue
St. Joseph, MO 64506
Telephone: (816) 364-2117
E-mail:    dboulware@polsinelli.com
           esmith@polsinelli.com
           scwright@polsinelli.com

Benjamin D. Brown, DC 495836
        *Of Counsel*
Laura Alexander, DC  988950
        *Of Counsel*
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500 W
Washington, D.C. 20005
Telephone: 202-408-4600      Fax: 202-408-4699
E-mail:       bbrown@cohenmilstein.com
              lalexander@cohenmilstein.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that I did on this 5th day of November, 2019, cause the above and foregoing to be sent via electronic transmission to:

Terry M. Petrie
Jacqueline C. Brown
Elizabeth McGurk
Brad Leneis
Brent Allen
United States Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370
Denver, CO  80202
Telephone:  303-844-1369     Fax:  303-844-1350
E-mail:        Terry.Petrie@usdoj.gov
                    Jacqueline.C.Brown@usdoj.gov
                    EMcGurk@usdoj.gov
                    Brad.Leneis@usdoj.gov
                    Brent.Allen@usdoj.gov

ATTORNEYS FOR DEFENDANT

  /s/ *R. Dan Boulware*

21